246 So.2d 98 (1971)
SHELBY MUTUAL INSURANCE COMPANY, Workmen's Compensation Carrier for T & R Packing Company, Inc., Petitioners,
v.
AETNA INSURANCE COMPANY, Workmen's Compensation Carrier for T & R Farms, Respondents.
No. 39868.
Supreme Court of Florida.
March 31, 1971.
B.C. Pyle, of Whittaker, Pyle & Wood, Orlando, for petitioners.
Jesse F. Sparks, of Gurney, Gurney & Handley, Orlando, Patrick H. Mears and J. Franklin Garner, Tallahassee, for respondents.
*99 BOYD, Justice.
This cause is before us on petition for writ of certiorari to the Industrial Relations Commission. The sole question presented is whether the accident, which resulted in the death of Paul Peterson, occurred within the scope of Peterson's regular employment with T & R Packing Company (Carrier, Shelby Mutual) or while Peterson's status was that of a special or loaned employee of T & R Farms (Carrier, Aetna Insurance Company). The dispute is between the two insurance carriers as to the proper carrier to pay the benefits involved. The rights of the decedent's widow and minor children are not directly affected.
Determination of Peterson's status at the time of the accident requires examination of the facts and for this purpose we accept the following findings of fact as stated in the Order of the Judge of Industrial Claims:
"The decedent prior to working at T & R Packing Company Inc., was employed by T & R Farms and was paid an hourly rate. In December of 1968, decedent worked for T & R Farms as a drag line operator which lasted about 2 weeks. When the decedent was working at the farm he worked on a harvesting machine which belonged to T & R Packing Company. When Peterson was transferred to T & R Packing Company from T & R Farms he was paid a salary. The last pay period from T & R Farms was December 22, 1968. From then on decedent was paid by T & R Packing Company, Inc., and except for the day of his accident he had not returned to the farm but had confined his work to the packing house premises. The decedent took orders from Harold A. Scoggins, foreman at T & R Packing Company and at no time did Mr. Scoggins instruct the decedent to do any work at the farm. The decedent, however, was subject to orders from the shareholders and officers of the corporation who were also the partners in T & R Farms.
"On March 1, 1969, the decedent elated over the birth of a son after having 5 girls, informed Mr. Scoggins that he was not going to work on Saturday, March 1st at the packing house but was going to celebrate the happy event. After he had gone to the farm to look for a wrench he owned personally and had left there while working on the harvester which was owned by T & R Packing Company, Inc. (sic) The decedent went to the farm to look for the wrench and while there, Mr. J.A. Tedder, a partner in T & R Farms and a principle (sic) shareholder in T & R Packing Company, Inc., ask (sic) the decedent if he would weld a coalter that had broken out of its hub before he left. Complying with this request the decedent placed the coalter on a 55 gallon drum to weld it and when he stuck the electrode to the coalter the drum exploded. The contents of the drum ignited and burned decedent upon 95% of his body. He expired the next day.
"There was no exchange of employees between the farm and the packing house or vice versa."
Based on the foregoing facts, the Judge concluded that the decedent, at the time of the accident, was acting as an employee of T & R Packing Company, Inc., and was not a special or loaned employee of T & R Farms. The Judge, therefore, ordered Shelby Mutual Insurance Company to continue payment of compensation and found no liability on the part of Aetna Insurance Company. The Full Commission affirmed.
Shelby Mutual has petitioned to this Court contending that the Judge and Full Commission have failed to apply the law regarding loaned or special employees as *100 set out in Berrier v. Associated Indemnity Co.,[1] and Stuyvesant Corp. v. Waterhouse.[2] In both of those decisions the employee was found to be a loaned or special employee at the time of the accidents there involved. There are factual similarities between those cases and the case before us. However, there are several important distinctions. In both the Berrier and Stuyvesant cases, there was a definite arrangement made between the general and special employers regarding the employees' services, and the employees were aware of these arrangements. In addition, the special employer in each case undertook to pay some compensation for the services rendered by the special employee.
In the instant case there was no arrangement between the farm and the packing house regarding Peterson's services. He was paid his regular wages by T & R Packing House and never received any compensation from T & R Farms for his occasional services to the farm, after his employment by the packing house.
The testimony of Mr. Robert Reedy, one of the owners of both the farm and the packing company, was that when Mr. Peterson happened to be out at the farm, he would, on occasion, he asked to repair something for the farm. There is the following testimony by Mr. Reedy, regarding who paid for Peterson's work at the farm:
"Q When he, when you sent him, he happened to be out there working (inaudible) and they got him to do something for the farm, did you have the farm to pay him for that or did you just go ahead and pay him his regular salary?
"A We paid him his regular salary. I will say this. He hadn't did too much for the farm, I'll say just occasionally.
"JUDGE: I have a question I'd like to ask. Now, you didn't pay him anything extra for these little doo dads he was doing out at the farm?
"WITNESS: No sir.
"JUDGE: Just paid him his regular salary?
"WITNESS: Yes, sir."
The testimony is undisputed that Peterson was paid $125.00 per week by the packing company for a five or six day week. On the day of the accident, a Saturday, he was receiving his regular pay from the packing company. Mr. Reedy testified:
"Q All right, this Saturday, March 1st, he ordinarily would work a six-day week for the salary of $125, is that correct?
"A A five and sometimes six.
"Q All right, so this Saturday then that the accident happened was merely a day that he took off?
"A That is correct.
"Q And was he instructed that when he got through with that job [welding the coalter] he could go on home and play with his baby rather than come back to the packing house?
"A That is correct."
Larson, in his authoritative text on workmen's compensation law,[3] points out that the first determination to be made in a purported lent or special employee situation is: "Did he [employee] make a contract of hire with the special employer?" This determination is essential, says Larson:
"[S]ince the employee loses certain rights along with those he gains when *101 he strikes up a new employment relation. Most important of all, he loses the right to sue the special employer at common law for negligence; and when the question has been presented in this form, the courts have usually been vigilant in insisting upon a showing of a deliberate and informed consent by the employee before employment relation will be held a bar to common-law suit.
"* * *
"What gives the lent-employee cases their special character, however, is the fact that they begin, not with an unknown relation, but with an existing employment relation. The conflict of interest becomes one not between employer and employee (who is assured of recovering from someone) but between two employers and their insurance carriers. There is here no place for presumptions based on the beneficent purposes of the act. The only presumption is the continuance of the general employment, which is taken for granted as the beginning point of any lent-employee problem. To overcome this presumption, it is not unreasonable to insist upon a clear demonstration that a new temporary employer has been substituted for the old, which demonstration should include a showing that a contract was made between the special employer and the employee, proof that the work being done was essentially that of the special employer, and proof that the special employer assumed the right to control the details of the work; failing this, the general employer should remain liable." (emphasis supplied)
Florida cases on special employers follow Larson in requiring a contract, express or implied, between the special employer and the employee.[4] Since the contract to be proved is frequently an implied one, factors showing a consensual relationship such as benefit, right of control and payment of compensation, must be considered.[5]
Returning to the facts before us, we conclude, as did the Judge of Industrial Claims and the Full Commission, that the T & R Packing Company remained Peterson's sole employer on the day of his fatal accident and that the evidence fails to establish any contract, express or implied, to substitute T & R Farms as a *102 temporary or special employer on the day in question.
Accordingly, petition for writ of certiorari is denied.
It is so ordered.
ROBERTS, C.J., and ERVIN, McCAIN and DEKLE, JJ., concur.
NOTES
[1] 142 Fla. 351, 196 So. 188 (Fla. 1939).
[2] 74 So.2d 554 (Fla. 1954).
[3] 1A Larson, Workmen's Compensation, § 48.10 (1967).
[4] Rainbow Poultry Co. v. Ritter Rental System, Inc., 140 So.2d 101 (Fla. 1962); Alter Sales Co. v. Sykes, 190 So.2d 746 (Fla. 1966); Maige v. Cannon, 98 So.2d 399 (Fla.App.1st 1957); Hamilton v. Shell Oil Co., 215 So.2d 21 (Fla.App.4th 1968).
[5] Hamilton v. Shell Oil Co., 215 So.2d 21, 23 (Fla.App.4th 1968):

"In Rainbow Poultry Company v. Ritter Rental System, Inc., Fla. 1962, 140 So.2d 101, 103, the Court held that the main factors to be considered in determining the existence of an employer-employee relationship for the purposes of liability under the Workmen's Compensation Law are: (1) whether or not a contract for hire, express or implied, exists between the employee and the alleged special employer; (2) whether or not the work being done at the time of the injury was essentially that of the alleged special employer; and (3) whether or not the power to control the details of work being done at the time of the accident resided in the alleged special employer.
"These factors are not coequal. The first factor, that is the existence of a contract for hire, either express or implied, is a statutory prerequisite to the existence of an employer-employee relationship for purposes of the Workmen's Compensation Law because F.S. 1967, Section 440.02(2) (a), F.S.A., defines `employee' as:
`* * * every person engaged in any employment under any appointment or contract of hire * * * express or implied, oral or written * * *.' (Emphasis added.)
"The other factors outlined in Rainbow Poultry Co. v. Ritter Rental System, Inc. are basically indicators of the existence of the first factor. Any other relevant factors may be considered. For example, who pays the employee."