862 So.2d 938 (2004)
Barbara A. HORN, Appellant,
v.
TANDEM HEALTH CARE OF FLORIDA, INC., Appellee.
No. 2D02-5658.
District Court of Appeal of Florida, Second District.
January 14, 2004.
*939 John Hugh Shannon of John Hugh Shannon, P.A., Lakeland, for Appellant.
John W. Bocchino and Gregory A. Jackson, Jr., of Bobo, Ciotolli, Bocchino & Newman, P.A., Orlando, for Appellee.
NORTHCUTT, Judge.
Barbara Horn filed a premises liability suit against Tandem Health Care of Florida, Inc., stemming from a slip and fall she suffered at Tandem's nursing home, Arbors at Lakeland. The circuit court granted summary judgment to Tandem, holding it was entitled to workers' compensation immunity because Horn was Tandem's borrowed employee at the time of the accident. The record on Tandem's motion for summary judgment did not support the holding. Accordingly, we reverse.
To justify a summary judgment, the record must conclusively demonstrate that there are no issues of material fact and that the movant is entitled to judgment as a matter of law. Snyder v. Cheezem Dev. Corp., 373 So.2d 719, 720 (Fla. 2d DCA 1979). Thus, the question here is whether the record conclusively demonstrated that Horn was Tandem's borrowed employee.
Horn was employed by Columbia Brandon Hospital as a respiratory therapist. Columbia and Tandem's predecessor corporation entered into a contract under which Columbia furnished respiratory therapy services to Tandem's nursing home residents when ordered by the residents' attending physicians. On the day of Horn's injury, Columbia had sent her to Arbors at Lakeland to perform services pursuant to that contract.
When determining that Horn was Tandem's borrowed employee, the circuit court posited that there was no appreciable distinction between this case and Maxson Construction Co. v. Welch, 720 So.2d 588 (Fla. 2d DCA 1998). In fact, however, that case bears little similarity to this one. Maxson had entered into a contract with AMA Staff Leasing under which AMA was to oversee Maxson's payroll and provide workers' compensation and other benefits to Maxson's employees. When Welch began working at Maxson, he signed documents declaring him to be an employee of AMA. Welch was injured while working on a Maxson project and received workers' compensation benefits through AMA. He eventually settled his workers' compensation claim in a lump sump settlement, approved by the judge of compensation claims in an order that listed AMA as the employer. Welch then sued Maxson, contending that Maxson was his only employer and that Maxson's failure to provide him with workers' compensation benefits subjected it to liability in tort.
This court reversed a judgment in Welch's favor. Id. at 590. The court held that Maxson was entitled to workers' compensation immunity based on two statutory provisions, the relevance of which stemmed from the uncontested fact that AMA was a staff leasing company. First, the court pointed to section 468.529(1), Florida Statutes (1995), which provides that a licensed leasing company is the employer of the leased employees. Second, the court held that Maxson's use of an employee leasing service entitled it to workers' compensation immunity pursuant to section 440.11(2), Florida Statutes (1995). Id. at 589-90. Section 440.11(2) provides in part that workers' compensation immunity
shall extend to an employer and to each employee of the employer which utilizes *940 the services of the employees of a help supply services company, as set forth in Standard Industry Code Industry Number 7363.... An employee so engaged by the employer shall be considered a borrowed employee of the employer, and, for the purposes of this section, shall be treated as any other employee of the employer.
Standard Industry Code 7363 refers to "[e]stablishments primarily engaged in supplying temporary or continuing help on a contract or fee basis."[1]Sagarino v. Marriott Corp., 644 So.2d 162, 165 (Fla. 4th DCA 1994). AMA, the licensed staff leasing company involved in Welch, obviously met that definition. But in this case the record contained nothing to suggest that Columbia was "primarily" engaged in supplying help on a contract or fee basis. For this reason, section 440.11(2) does not support Tandem's summary judgment, and Welch does not control this case.
Neither did the record demonstrate that Horn was Tandem's special employee outside the statutory context. Under the tests established in case law, there is a presumption that the employee's general employment has continued. Shelby Mut. Ins. Co. v. Aetna Ins. Co., 246 So.2d 98, 101 (Fla.1971) (citing 1A Larson, Workmen's Compensation, § 48.10 (1967)). To determine whether an employee's "general" employer has lent her to a "special" employer, the courts have devised a multi-faceted test consisting primarily of three elements: (1) whether there was a contract for hire, express or implied, between the special employer and the employee; (2) whether the work being done at the time of the injury was essentially that of the special employer; and (3) whether the power to control the details of the work being done at the time of the accident resided in the special employer. Shelby, 246 So.2d at 101 n. 5.
The first factorthat there was a contract for hire between the special employer and the employeeis the critical one, the others being indicia of such a contract. Shelby, 246 So.2d at 101 n. 5; Venezia v. Egan, 671 So.2d 175, 177 (Fla. 5th DCA 1996). The evidence of a contract creating a special employment must amount to a "clear demonstration" of a "deliberate and informed consent" by the employee. Shelby, 246 So.2d at 101. This is because an employee loses rights when she enters into an employment relationship, the most important of which is the right to sue the special employer for negligence. See id. (citing Larson, § 48.10).
Here, there was no express contract between Horn and Tandem, so any contract for hire between them could only be implied. But the two factors that most commonly imply the existence of a contract for hire either were lacking or were sufficiently debatable that they did not amount to a "clear demonstration" of a "deliberate and informed consent" by Horn. See id. The record in this case did not conclusively demonstrate that the power to control the details of Horn's work at the time of the accident resided in Tandem. If anything, the evidence proved the contrary. Under its contract with Columbia, Tandem agreed to schedule therapy visits pursuant to orders by the residents' attending physicians, to designate a "contact person" in the nursing home's management "for Therapist(s) to communicate with," and to perform "certain administrative services" *941 for the therapists. On the other hand, the contract declared that the "Hospital shall maintain ultimate control and responsibility for Therapists and the services provided by Therapists hereunder." Consistent with that contract provision, Horn testified that her work at Arbors, and the other nursing homes to which she was assigned, was overseen by supervisors employed by Columbia.
The second factor, whether Horn's work was essentially that of Tandem, presents a closer question. But, given the contract provision assigning ultimate responsibility for the therapists' work to Columbia, it is at best arguable whether this factor supports a finding of special employment at all, let alone under the stringent test governing motions for summary judgment.
Tandem points out that those factors do not constitute an exhaustive list. It contends that a contract for hire between Tandem and Horn should be implied from Horn's knowledge of and acquiescence to the agreement between Tandem and Columbia. But the Tandem/Columbia contract went to pains to clarify that the therapists were not to be considered employees of Tandem:
Hospital and its Therapist(s) are not employees of Facility, are responsible for all taxes and insurance and thereby indemnify Facility for any and all liability therefor. Further, Hospital and its Therapist(s) agree that they shall not have any claim against Facility under this Agreement for vacation, sick leave, retirement benefits, workers' compensation, disability or unemployment insurance benefits, or employee benefits of any kind.
Certainly, no contract for hire could be implied from Horn's acquiescence to an agreement that explicitly disavowed any such relationship.
We reverse the summary judgment and remand for further proceedings.
SALCINES and STRINGER, JJ., Concur.
NOTES
[1] The Standard Industrial Classification (SIC) system, promulgated by the Office of Management and Budget, was the industry classification system used by statistical agencies of the United States. In 1997 the OMB began phasing it out in favor of the newly devised North American Industry Classification System.