875 So.2d 700 (2004)
Teresa FOLDS, Appellant,
v.
J.A. JONES CONSTRUCTION COMPANY f/k/a Metric Constructors, Inc., Tampa Service Company, Inc. d/b/a Pacesetters Personnel Service, and John Doe, Appellees.
No. 1D03-2188.
District Court of Appeal of Florida, First District.
June 3, 2004.
*701 Christopher M. Vlachos and Troy A. Rafferty of Levin, Papantonio, Thomas, Mitchell, Echsner & Proctor, P.A., Pensacola, for Appellant.
Joseph A. Wilson of Wilson, Harrell, Smith, Boles & Farrington, P.A., Pensacola, for Appellee Tampa Service Company, Inc. d/b/a Pacesetters Personnel Service.
*702 Hinda Klein of Conroy, Simberg, Ganon, Krevans & Abel, P.A., Hollywood, for Appellee J.A. Jones Construction Company f/k/a Metric Constructors, Inc.
ERVIN, J.
This is an appeal from two separate final summary judgments entered in a premises liability action in favor of appellees, J.A. Jones Construction Co. and Pacesetters Personnel Service, on the ground that they were immune from tort liability by reason of the bar of workers' compensation for injuries suffered by appellant, Teresa Folds, at the job site. We affirm.
Folds was assigned by her employer, Complete Clean All, a temporary employment agency, to assist the general contractor, J.A. Jones Construction Co., by providing janitorial and cleanup services at the construction site of an apartment complex in Pensacola, Florida. While so engaged, Folds was injured when she was struck on the head by a box thrown from an upper balcony of the apartment complex by an unidentified employee[1] of Pacesetters Personnel Service, a help-supply services company. After obtaining workers' compensation benefits from Complete Clean All, she brought a personal injury action against J.A. Jones, Pacesetters, and the latter's employee, John Doe.[2] She first contends the lower court erroneously concluded J.A. Jones was entitled to summary judgment, because it was her statutory employer and therefore immune from liability under section 440.10(1)(b), Florida Statutes (Supp.1998), which provides, in pertinent part:
In case a contractor sublets any part... of his or her contract work to a subcontractor ..., all of the employees of such contractor and subcontractor ... shall be deemed to be employed in one and the same business ...; and the contractor shall be liable for, and shall secure, the payment of compensation to all such employees, except to employees of the subcontractor who has secured such payment.

(Emphasis added.)
Folds points out that the subcontract between J.A. Jones and Complete Clean All required Clean All and not J.A. Jones to provide workers' compensation insurance for the employees of Clean All; therefore, as a matter of law, she could not be considered the statutory employee of the general contractor. Folds misreads section 440.10(1)(b). The final phrase therein does not remove workers' compensation immunity from a general contractor that does not itself provide coverage to a subcontractor's employees. It means simply that the contractor must be responsible for securing such coverage.
J.A. Jones complied with its legal obligation by requiring the subcontractor to furnish workers' compensation insurance to its employees while engaged in the work at the construction site. See Miami-Dade County v. Acosta, 757 So.2d 539 (Fla. 3d DCA 2000) (holding that Miami-Dade County was immune from liability, because it ensured that its subcontractor, who employed the plaintiff, had provided workers' compensation coverage to its employees); Broward County v. Rodrigues, 686 So.2d 774 (Fla. 4th DCA 1997) (holding that the county was immune from liability as the statutory employer of the subcontractor, who employed the plaintiff, because the subcontractor was required by its contract with the county to provide its employees with workers' compensation coverage).
*703 Appellant next argues the lower court erred in granting summary judgment to Pacesetters on the theory that its employee, John Doe, was a borrowed servant of the general contractor, because, she contends, genuine fact issues remained as to the nature of the work done and the control that J.A. Jones asserted over day laborers such as Doe. Folds overlooks the fact that section 440.11(2), Florida Statutes (1997), effectually creates a rebuttable presumption that a special employer using the services of a temporary employment agency, such as Pacesetters, becomes the statutory employer of the borrowed servant.[3] Subsection (2) provides:
The immunity from liability described in subsection (1) shall extend to an employer and to each employee of the employer which utilizes the services of the employees of a help supply services company, as set forth in Standard Industry Code Industry Number 7363, when such employees, whether management or staff, are acting in furtherance of the employer's business. An employee so engaged by the employer shall be considered a borrowed employee of the employer, and, for the purposes of this section, shall be treated as any other employee of the employer.
Before the creation of subsection (2), added by chapter 89-284, section 8, Laws of Florida, the only presumption accorded was that the assigned worker continued in the employment of the leasing agency, a presumption that could only be overcome by a clear demonstration that the new temporary employer had been substituted for the former. See Shelby Mut. Ins. Co. v. Aetna Ins. Co., 246 So.2d 98, 101 (Fla. 1971) (quoting 1A Larson, Law of Workmen's Compensation, § 48.10 (1967)).
The current version of Larson's treatise notes the distinction between the types of services the general employer furnishes to the special employer, and refers to the majority rule recognizing that if the general employer simply arranges for labor without heavy equipment,[4] the transferred worker then becomes the employee of the special employer. See Arthur Larson & Lex K. Larson, 3 Larson's Workers' Compensation Law, § 67.05[3] (2003). Such rule applies particularly to the furnishing of labor services. Id. Finally, Larson observes that the entire question of which of the two, the general or special employer, should be considered the employer of the temporarily assigned worker at the time of injury has been addressed in some jurisdictions by statute, and he specifically notes section 440.11(2), which he characterizes as "mandat[ing] that employees from `help supply companies' shall be treated as employees of the employer to whom they have been sent to work." Id. at n. 24.1.
Florida case law similarly recognizes that the statute extends workers' compensation immunity from tort liability to special employers that hire workers from temporary employment agencies. See Watson v. Job Corp., 840 So.2d 367 *704 (Fla. 3d DCA), cert. denied, ___ U.S. ___, 124 S.Ct. 546, 157 L.Ed.2d 419 (2003); Caramico v. Artcraft Indus., Inc., 727 So.2d 348 (Fla. 5th DCA 1999); Maxson Constr. Co., Inc. v. Welch, 720 So.2d 588 (Fla.2d 1998).
In our judgment, once J.A. Jones presented evidence that it had hired day laborers from Pacesetters and placed them under its control, a statutory presumption arose that such workers, including John Doe, were its borrowed servants. The burden of producing evidence was thereupon placed upon Folds to show the contrary. None was presented.[5] As consequence, the lower court properly entered summary judgment for Pacesetters under the theory that John Doe was under the control of J.A. Jones, which became Doe's statutory employer, and thus Pacesetters could not be responsible for his actions.
Folds' alternative argument is that if J.A. Jones is correctly considered to be her statutory employer, J.A. Jones' actions in supervising Doe, which resulted in her injuries, were tantamount to gross negligence; therefore, the trial court erroneously entered summary judgment for J.A. Jones. We cannot agree. Three exceptions are recognized to the bar of immunity provided in section 440.11. First, an injured employee may sue the employer for an intentional tort, which is defined as conduct that shows a deliberate intent to injure, or that is substantially certain to result in injury or death to the employee. Turner v. PCR, Inc., 754 So.2d 683 (Fla. 2000). Second, an injured employee may sue a managerial-level employee, such as a partner, officer or director, or supervisor, for acts constituting culpable negligence, which is defined as reckless indifference or grossly careless disregard of human life. § 440.11(1), Fla. Stat. (1997); Eller v. Shova, 630 So.2d 537 (Fla.1993). Third, an injured employee may sue a fellow worker for conduct that rises to the level of gross negligence, which is an act or omission that a reasonable, prudent person would know is likely to result in injury to another. Id.
Initially, we note that Folds' complaint failed to allege the commission of an intentional tort, but instead merely alleged simple negligence. In her amended complaint, she expressly alleged that J.A. Jones and Pacesetters negligently maintained the construction site in that John Doe had thrown materials off the second-floor balcony without regard for others working on the property. The rule is firmly established that summary judgment will be affirmed if the allegations of the complaint and the evidence show only that the employer was negligent or grossly negligent, but fail to show an intentional tort. Lawton v. Alpine Engineered Prods., Inc., 498 So.2d 879 (Fla.1986).
Despite the pleading insufficiency, Folds relies on evidence relating to what she describes as the gross negligence of J.A. Jones' project superintendent in failing to properly supervise day laborers such as Doe in the disposal of construction debris from the apartment premises. Folds, however, did not bring an action against the managerial employee, and even if she had, she would have been required to show culpable, not gross, negligence.
Finally, Folds claims that her expert provided evidence that raised a genuine *705 issue of material fact, because he stated in his affidavit that J.A. Jones had violated 29 CFR 1926.252(a), by not ensuring disposal of debris through an enclosed chute, as required by the regulation. An argument similar to that raised by Folds has previously been rejected. The supreme court has expressly stated that "failure to provide a safe work place or to follow OSHA guidelines does not constitute an intentional tort." Fisher v. Shenandoah Gen. Constr. Co., 498 So.2d 882, 883 (Fla.1986) (affirming dismissal of complaint that failed to state a cause of action for intentional tort, because the complaint failed to allege that the employer's acts raised the virtual certainty that the employee would be injured).
The summary judgments entered are in all respects AFFIRMED.
WOLF, C.J., and VAN NORTWICK, J., CONCUR.
NOTES
[1] Plaintiff Folds designated the employee in her complaint and other pleadings with the pseudonym, "John Doe."
[2] John Doe is not a party in this appeal.
[3] It appears that this type of presumption is one affecting the burden of proof. See § 90.302(2), Fla. Stat., and Charles W. Ehrhardt, Florida Evidence § 302.2 (2003 ed.).
[4] Clearly the statutory presumption discussed infra, making the employee of a help-supply services company the borrowed servant of the special employer, does not apply to the employee of a general employer that leases to a temporary employer heavy equipment and a servant to operate it, because, ordinarily, control and maintenance of the machinery remains with the general employer. See Venezia v. Egan, 671 So.2d 175 (Fla. 5th DCA 1996). In such cases, the presumption of continued employment of the temporary worker with the general employer applies. Id.
[5] Presumably, the presumption that a temporary employee, assigned to a special employer, became its borrowed servant could be overcome by evidence disclosing contractual terms precluding an employment arrangement, as in Thornton v. Paktank Florida, Inc., 409 So.2d 31 (Fla. 2d DCA 1981), stating that the temporary employee could not be considered the assigned entity's employee.