892 So.2d 1079 (2004)
Shannon DEROGATIS and Craig Derogatis, husband and wife, Appellants,
v.
FAWCETT MEMORIAL HOSPITAL, a Florida corporation, Appellee.
No. 2D04-555.
District Court of Appeal of Florida, Second District.
November 3, 2004.
*1080 James R. Hutchens of James R. Hutchens, P.A., Sarasota, for Appellants.
Mark D. Tinker of Fowler, White, Boggs, Banker, P.A., St. Petersburg, for Appellee.
WHATLEY, Judge.
Shannon Derogatis appeals the final summary judgment entered in favor of Fawcett Memorial Hospital ("Fawcett" or "the hospital") in her action for damages for injuries she sustained when she slipped and fell at the hospital. The trial court found that Fawcett was immune from liability under the Workers' Compensation Act. We reverse because the record reveals that genuine issues of material fact remain. See Holl v. Talcott, 191 So.2d 40 (Fla.1966) (holding that movant for summary judgment has burden, while drawing all inferences in favor of the nonmoving party, of conclusively proving absence of genuine issue of material facts).
At the time of her injuries, Derogatis was on the hospital premises in conjunction with her employment with American Endoscopy Services, Inc. (AES) as an on-site manager. She filed suit against Fawcett after obtaining workers' compensation *1081 benefits from AES, with whom Fawcett had contracted to provide laparoscopic surgical equipment and corresponding support services.
In moving for summary judgment, Fawcett argued that it was immune from liability pursuant to the Workers' Compensation Act either as Derogatis's special employer under the borrowed employee doctrine, § 440.11(2), Fla. Stat. (2000),[1] or as her statutory employer, § 440.10(1)(b). The trial court ruled that Derogatis was a borrowed employee of Fawcett and was in the course and scope of her employment at the time she was injured. The trial court did not address whether Derogatis was Fawcett's statutory employee, but as we shall explain, the record in this case does not support a summary judgment under either theory.

A. Special Employment
A special employer is one to whom a general employer has lent its employee. A special employer may be immune from suit on the basis of the common law special employment relationship that is premised on the borrowed-employee doctrine or on the basis of the statutory special employment relationship, § 440.11(2). See Horn v. Tandem Health Care of Florida, Inc., 862 So.2d 938 (Fla. 2d DCA 2004); Sagarino v. Marriott Corp., 644 So.2d 162, 165 (Fla. 4th DCA 1994).

1. Common Law Special Employment
Under the common law, "there is a presumption that the employee is not a borrowed servant, but instead continues to work for and be an employee of the general employer." Sagarino, 644 So.2d at 165 (citing Shelby Mut. Ins. Co. v. Aetna Ins. Co., 246 So.2d 98 (Fla.1971)). See Gen. Crane, Inc. v. NcNeal, 744 So.2d 1062, 1065 (Fla. 4th DCA 1999) ("where a general employer rents equipment of considerable value along with a servant to operate it.... [I]t is presumed that the general employer expects the employee to protect its interest in the equipment, which interest may be contrary to the interests of the temporary employer, thus, militating in favor of the presumption of continued general employment."). To overcome this presumption, three elements must be shown: there was a contract for hire, either express or implied, between the special employer (Fawcett) and the employee; the work being done at the time the employee was injured was essentially that of the special employer; and the special employer had the power to control the details of the work being done at the time of the injury. Sagarino, 644 So.2d 162. Accord Horn, 862 So.2d 938. Whether there was a contract for hire is the critical element, the others being indicia of such a contract. Id. at 940.
The evidence of a contract creating a special employment must amount to a "clear demonstration" of a "deliberate and informed consent" by the employee. This is because an employee loses rights when she enters into an employment relationship, the most important of which is the right to sue the special employer for negligence.
Id. (citations omitted).
There is no dispute in this case regarding the fact that there was not an express contract for hire between Fawcett and Derogatis. Thus, any contract for hire between them was implied. However, the indicia of an implied contract are missing from the record before us.
Derogatis testified at her deposition that her duties at the hospital included maintaining *1082 the reusable laparoscopic instruments; pulling all items needed for each laparoscopic procedure, some of which were hospital property, and setting them up in the room; being present during the procedures to troubleshoot regarding any problems that arose with the equipment; decontaminating all the instruments; and ordering laparoscopic items. She stated that AES showed her the AES/Fawcett contract so that she would be aware of which services and products AES was providing to Fawcett and which they were not providing. Derogatis's employment contract with AES set forth exactly how Derogatis was to assist with the laparoscopic procedures, including processing AES equipment pursuant to AES guidelines. That contract also specified the salary that AES was to pay Derogatis.
Derogatis also testified at her deposition that before she began her first day of work at Fawcett, she interviewed with the operating room administrator, who her boss told her had some say over whether she got the job. That administrator was Fawcett's vice president for surgical services. She testified at her deposition that she was not ultimately responsible for hiring Derogatis. She also stated that she had no responsibility to direct or oversee Derogatis's activities, nor was she aware of any other Fawcett executive with direct authority over Derogatis. Rather, Derogatis was "self-directed" by the hospital laparoscopic procedure schedule. As Derogatis explained, the hospital scheduled the procedures, and at the end of each day she would check the schedule to determine when she was needed the next day. If she could not come to work, Derogatis would first call her boss at AES and then she would call the hospital to let them know that her boss would be replacing her that day. Derogatis filled out an AES time sheet daily and sent it in to AES weekly. She did not know if Fawcett had any record of the hours she was present at the hospital.
The AES/Fawcett contract required that AES personnel be available from 7 a.m. to 5 p.m., five days a week, via pager or on site, and to be at the hospital thirty minutes prior to the start of a procedure. The contract states that AES assumes liability for the performance of their personnel, and AES requests a copy of Fawcett's job description to assure that its personnel comply with Fawcett's standards. Fawcett required Derogatis to wear a Fawcett name badge and Fawcett scrubs, and she was entitled to an employee discount at the hospital cafeteria. Derogatis learned the hospital's policies and procedures at a hospital orientation, which her boss at AES told her to attend. At the time she slipped and fell in the hospital locker room, Derogatis was changing into her scrubs before she assisted with a laparoscopic procedure.
As these facts reveal, the record does not conclusively demonstrate that Derogatis was doing the work of Fawcett and that Fawcett controlled the details of Derogatis's work. If anything, the record demonstrates that Derogatis's general employment by AES continued. Thus, the record does not support a final summary judgment in favor of Fawcett on the issue of common law special employment.

2. Statutory Special Employment
Section 440.11(2) provides as follows:
[I]mmunity from liability ... shall extend to an employer and to each employee of the employer which utilizes the services of the employees of a help supply services company, as set forth in Standard Industry Code Industry Number 7363, when such employees, whether management or staff, are acting in furtherance of the employer's business. An *1083 employee so engaged by the employer shall be considered a borrowed employee of the employer, and, for the purposes of this section, shall be treated as any other employee of the employer. The employer shall be liable for and shall secure the payment of compensation to all such borrowed employees as required in s. 440.10, except when such payment has been secured by the help supply services company.
Standard Industry Code 7363 defines help supply services companies as "[e]stablishments primarily engaged in supplying temporary or continuing help on a contract or fee basis." Horn, 862 So.2d at 940 (citing Sagarino, 644 So.2d at 165). The record contains no evidence conclusively showing that AES was a help supply services company. The issue was briefly addressed by Fawcett's counsel at the summary judgment hearing when she made the conclusory statement that AES was such a company. But Fawcett filed no affidavits or other evidence with its motion for summary judgment or its memorandum in support thereof establishing the absence of a genuine issue of fact regarding AES's status as a help supply services company.
[A] movant for summary judgment who fails to come forward with enough proof to sustain his motion is not entitled to have it granted.... [The movant] does not sustain ... [its] burden by showing that up until the time of his motion his adversary has not produced sufficient evidence in support of his pleadings to require a trial.
Matarese v. Leesburg Elks Club, 171 So.2d 606, 607 (Fla. 2d DCA 1965).
Fawcett's failure to conclusively show that AES was a help supply services company forecloses summary judgment in its favor under the statutory special employment theory. Consequently, we need not reach the issue of whether Derogatis was acting in furtherance of her employment at the time she was injured.

B. Statutory Employment
Section 440.10(1)(b) provides as follows:
In case a contractor sublets any part or parts of his or her contract work to a subcontractor or subcontractors, all of the employees of such contractor and subcontractor or subcontractors engaged on such contract work shall be deemed to be employed in one and the same business or establishment; and the contractor shall be liable for, and shall secure, the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment.
In order for Fawcett to be considered a contractor pursuant to section 440.10(1)(b), its "`primary obligation in performing a job or providing a service must arise out of a contract.'" Sotomayor v. Huntington Broward Assocs. L.P., 697 So.2d 1006, 1007 (Fla. 4th DCA 1997) (quoting Gator Freightways, Inc. v. Roberts, 550 So.2d 1117, 1119 (Fla.1989)). This" `primary obligation' ... is `an obligation under the prime contract between the contractor and a third party.'" Sotomayor, 697 So.2d at 1007 (citing Miami Herald Publ'g v. Hatch, 617 So.2d 380, 381 (Fla. 1st DCA 1993)). "Stated another way, the rule is that the entity alleged to be the contractor must have `incurred a contractual obligation to a third party, a part of which obligation the entity has delegated or sublet to a subcontractor whose employee is injured.'" Antinarelli v. Ocean Suite Hotel, 642 So.2d 661, 662 (Fla. 1st DCA 1994) (quoting Hatch, 617 So.2d at 381). Thus, Fawcett had to show that it was engaged in performing contract work for its patients and that it sublet part of that work to AES, whose employee was *1084 injured. See Rabon v. Inn of Lake City, 693 So.2d 1126, 1129 (Fla. 1st DCA 1997).
The record is devoid of any contracts between Fawcett and its patients, and therefore, Fawcett failed to show that it incurred a contractual obligation to its patients to provide laparoscopic equipment and support services. Cf. Shands Teaching Hosp. and Clinic, Inc. v. Juliana, 863 So.2d 343 (Fla. 1st DCA 2003) (affirming finding that Shands was responsible for negligence of heart-lung machine operator because said operator's services fell within Shands' contract with the patient to provide "hospital care, [and] medical treatment"; noting that although admission form and operating permit signed by patient's parents gave notice that Shands was not responsible for negligence of physicians, residents, and students, they did not give notice that operator was not discharging Shands' duties under its contract with patient). Thus, the evidence did not support a final summary judgment in favor of Fawcett on the issue of statutory employment.
Accordingly, we reverse the final summary judgment entered in favor of Fawcett and remand for proceedings consistent with this opinion.
Reversed and remanded.
NORTHCUTT and KELLY, JJ., Concur.
NOTES
[1] The workers' compensation statute in effect at the time of the accident controls. See Miami Herald Publ'g v. Hatch, 617 So.2d 380 (Fla. 1st DCA 1993); Fontainebleau Hotel v. Wilcox, 570 So.2d 1083 (Fla. 3d DCA 1990).