943 So.2d 952 (2006)
Timothy BIGGINS, Appellant,
v.
FANTASMA PRODUCTIONS, INC. OF FLORIDA, Freelance Productions Inc., Chosen Sound & Lighting, Inc., and the City of Pompano Beach, Appellees.
No. 4D05-3834.
District Court of Appeal of Florida, Fourth District.
December 6, 2006.
*954 Mark L. Zientz and Andrea Cox of Law Offices of Mark L. Zientz, P.A., Miami, for appellant.
Eric G. Belsky of Johnson, Leiter & Belsky, P.A., Fort Lauderdale, for appellee Chosen Sound & Lighting, Inc.
HAZOURI, J.
Timothy Biggins appeals a final summary judgment entered in favor of Chosen Sound & Lighting, Inc. We reverse.
*955 Biggins filed a four-count complaint against Chosen Sound, Fantasma Productions, Inc. of Florida, Freelance Productions, Inc., and the City of Pompano Beach, alleging negligence against each defendant arising from an accident in which Biggins received serious injuries after falling from a "Genie" lift used for rigging cables in preparation for a George Benson concert at the Pompano Beach Amphitheatre. Fantasma filed a motion for summary judgment on grounds that it enjoyed immunity as a general contractor under the Workers' Compensation Act. The trial court granted Fantasma's motion. Biggins voluntarily dismissed his case against Freelance and reached a settlement with the City of Pompano Beach. Chosen Sound was the only defendant remaining in the suit and is the only defendant involved in this appeal.
Biggins's allegations against Chosen Sound were that it: failed to provide him with sufficient equipment, assistance, and supervision to safely perform his job; negligently ordered Biggins to perform work beyond the scope of his duties, responsibilities, and experience; failed to warn Biggins regarding the dangerous condition of the Genie lift when it knew or should have known of the danger; and created a hazardous environment by attempting to construct the stage and lighting without sufficient equipment or supervision.
Biggins testified at his deposition that he was hired by Backstage Productions to do lighting and electrical set-ups. Backstage was employed to provide workers for the George Benson concert at the Pompano Beach Amphitheatre in November 1999. Biggins was asked to work as a "rigger" at the concert, although he had only assisted other riggers in the past. Biggins testified that a rigger is a person who is responsible for hanging equipment from the ceiling while on a lift. Backstage did not train Biggins on the use of lifts.
Biggins testified that he was working as an electrician for Backstage at the concert when an employee for Chosen Sound directed him to find a lift to go up and hang cable. Biggins could not locate "safety legs" for the lift. Safety legs are designed and used to stabilize the lift. Biggins testified that the Chosen Sound employee directed him to go up in the lift, even though there were no safety legs.
Biggins went up on the lift by himself. After realizing he could not rig cables from the location where the lift was positioned, he started to bring the lift down. As he was bringing the lift down, the lift became unstable and fell over causing Biggins to fall approximately 14 to 20 feet, sustaining serious injuries.
Chosen Sound filed two motions for summary judgment. The first alleged that Chosen Sound did not owe Biggins a legal duty because it did not own the Genie lift involved in the accident. The second motion for summary judgment claimed Chosen Sound had immunity from suit under the Workers' Compensation Act.
In entering the summary judgment for Chosen Sound, the trial court granted both motions for summary judgment stating: "The Court finds that there are no genuine issues of material fact which would preclude Summary Judgment under the facts of this case."
"The standard of review of an order granting summary judgment is de novo." Mobley v. Gilbert E. Hirschberg, P.A., 915 So.2d 217, 218 (Fla. 4th DCA 2005) (citing Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000)). The party moving for summary judgment has the burden of proving the absence of a genuine issue of material fact. Holl v. Talcott, 191 So.2d 40, 43 (Fla.1966). "If *956 the evidence raises any issue of material fact, if it is conflicting, if it will permit different reasonable inferences, or if it tends to prove the issues, it should be submitted to the jury as a question of fact to be determined by it." Moore v. Morris, 475 So.2d 666, 668 (Fla.1985) (citations omitted).
We dispense with the first basis for the granting of the summary judgment, i.e., that there was no genuine issue of material fact that Chosen Sound owed a legal duty to Biggins. A review of the record reveals that there are genuine issues of material fact concerning whether Chosen Sound owed a legal duty to Biggins and whether that duty was violated, thereby precluding summary judgment.
We also conclude that the trial court erred in granting Chosen Sound's motion for summary judgment based upon its conclusion that Chosen Sound was entitled to workers' compensation immunity.
Section 440.10(1)(b), Florida Statutes (1999), provides:
In case a contractor sublets any part or parts of his or her contract work to a subcontractor or subcontractors, all of the employees of such contractor and subcontractor or subcontractors engaged on such contract work shall be deemed to be employed in one and the same business or establishment; and the contractor shall be liable for, and shall secure, the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment.
Biggins claims Chosen Sound was not entitled to workers' compensation immunity because Chosen Sound was a subcontractor standing in a horizontal relationship to Biggins's employer, Backstage, which was another subcontractor under the same general contractor (Fantasma). See § 440.10(1)(e), Fla. Stat. (1999) (providing that a subcontractor is not liable for the payment of compensation to the employees of another subcontractor on such contract work and is not protected by the exclusiveness-of-liability provisions of s. 440.11 from action at law or in admiralty on account of injury of such employee of another subcontractor).[1]
Chosen Sound concedes that it was not Biggins's statutory employer pursuant to section 440.10(1)(b), Florida Statutes (1999), however, Chosen Sound claims that it is entitled to workers' compensation immunity because Biggins was Chosen Sound's borrowed servant under section 440.11, Florida Statutes (1999). Although it is not clear in the trial court's order whether it granted summary judgment on the basis of workers' compensation immunity pursuant to section 440.10(1)(b),[2] it would nonetheless be error to do so in this case because Chosen Sound was not Biggins's statutory employer.
Biggins contends that Chosen Sound is not immune from liability under the borrowed servant (special employee) doctrine. "[T]here is a presumption that the employee is not a borrowed servant, *957 but instead continues to work for and be an employee of the general employer." Sagarino v. Marriott Corp., 644 So.2d 162, 165 (Fla. 4th DCA 1994) (citing Shelby Mut. Ins. Co. v. Aetna Ins. Co., 246 So.2d 98 (Fla.1971)). To overcome this presumption, a party must establish the following elements: (1) there was a contract for hire, either express or implied, between the special employer and the employee; (2) the work being done at the time of the injury was essentially that of the special employer; and (3) the power to control the details of the work resided with the special employer. Sagarino, 644 So.2d at 165 (citing Shelby Mut. Ins. Co., 246 So.2d at 101, n. 5). The first factor, whether there was an express or implied contract, is the critical element. Derogatis v. Fawcett Mem'l Hosp., 892 So.2d 1079, 1081 (Fla. 2d DCA 2004) (citing Horn v. Tandem Health Care of Fla., Inc., 862 So.2d 938, 940 (Fla. 2d DCA 2004)). The remaining two factors are indicia of such a contract. Id.

Factor One: Existence of a Contract
To satisfy the first factor, the special employer must establish that there was a contract for hire, either express or implied, between the special employer and the employee. The special employer must show also that there was a "deliberate and informed consent by the employee" to the contract. Sagarino, 644 So.2d at 165 (citing Shelby Mut. Ins. Co., 246 So.2d at 101, n. 5). This court requires the special employer to show "a `definite arrangement between the general and special employer and the employee's knowledge thereof.'" Sagarino, 644 So.2d at 165 (citing Pepperidge Farm, Inc. v. Booher, 446 So.2d 1132, 1132 (Fla. 4th DCA 1984) (emphasis added), approved, 468 So.2d 985 (Fla.1985)).
In the instant case, there is no evidence of an express contract between Chosen Sound and Backstage, or between Chosen Sound and Biggins. The record indicates that Chosen Sound had only one express contract with respect to the concert, a contract with Fantasma to supply sound and lighting equipment to the concert site.
Moreover, there is no conclusive evidence that an implied contract for hire existed between Biggins and Chosen Sound. Citing deposition testimony of representatives from Fantasma, Chosen Sound, and Backstage, Chosen Sound argues that the evidence shows that Biggins's temporary employment with Chosen Sound arose out of a "definite arrangement" between Chosen Sound and Backstage, whereby Chosen Sound:
was hired by the promoter to provide the sound and lighting equipment and the technicians to supervise its setup and operation for the concert, while Backstage Productions was hired for the express purpose of providing the physical labor necessary to complete these and other specific tasks. Furthermore, all of the parties to this arrangement were clearly aware of the interrelated (if not interdependent) work they were to perform at the concert, inasmuch as they had done so together many times in the past.
However, the parties' awareness of interrelated functions at the concert does not automatically establish the existence of an implied in fact contract between Chosen Sound and Backstage. Despite the testimony cited by Chosen Sound, there is no conclusive evidence that Chosen Sound and Backstage had any arrangement, albeit formal or informal, whereby Backstage provided employees to Chosen Sound for assistance with setting up for the concert. Rather, Backstage contracted with Fantasma to provide Fantasma with stagehands. If anything, Backstage *958 employees like Biggins worked with Chosen Sound, for Fantasma.
Further, there is no conclusive evidence that Biggins gave "deliberate and informed consent" to employment with Chosen Sound. See Sagarino, 644 So.2d at 165 (citing Shelby Mut. Ins. Co., 246 So.2d at 101, n. 5). Biggins testified that he was unaware of any relationship between Backstage and Chosen Sound. He testified that only a representative from Backstage had the authority to fire him, although he recognized that another subcontractor on the job could report inadequate work and ask him to be removed as a worker.
Chosen Sound argues that Biggins's knowledge and consent to his special employment was implied by his acceptance of direction from Chosen Sound. See Rumsey v. E. Distrib., Inc., 445 So.2d 1085, 1086 (Fla. 1st DCA 1984) (citing 1C Larson, Law of Workmen's Compensation § 48.00 (1982)) (recognizing that "the requisite consent to employment `may be implied from the employee's acceptance of the special employer's control and direction'"). Biggins testified that he knew the work he was doing was the work Chosen Sound was supposed to be doing, and that his job with Backstage was simply to "follow the instructions of whoever was in charge of the lighting and electrical on any given job." However, Biggins's acceptance of direction from Chosen Sound does not establish that he consented to a contract for hire. See Austin v. Duval County Sch. Bd., 657 So.2d 945, 950 (Fla. 1st DCA 1995) (explaining that employee's acceptance of direction from another employer is insufficient to demonstrate the employee knowingly entered into a contract of hire with that employer).
Thus, Chosen Sound failed to establish conclusively that an express or implied contract for hire existed between Chosen Sound and Biggins, or that Biggins consented to employment with Chosen Sound. It is clear from Biggins's testimony that summary judgment is inappropriate because a trier of fact could conclude either that Biggins consented to this employment, or that he did not consent. See Smith v. Greg's Crane Serv., Inc., 576 So.2d 814, 815-16 (Fla. 4th DCA 1991) (holding that summary judgment on the issue of whether an injured worker is a borrowed servant is inappropriate where "the undisputed facts could support two conclusions or inferences by the trier of fact").

Factor Two: Work is Essentially that of Special Employer
The second prong of the borrowed servant test considers whether the work being done at the time of the injury was essentially that of the special employer. Sagarino, 644 So.2d at 165 (citing Shelby Mut. Ins. Co., 246 So.2d at 101, n. 5). Biggins claims that Chosen Sound's only responsibility was to provide sound and lighting equipment to the concert site. However, this claim is contradicted by the evidence, as Chosen Sound points out. George Perley of Fantasma testified that "the lighting and sound company provides a crew to operate that equipment and supervises the setup." Robert Hardtke of Chosen Sound testified that the lighting technician's responsibilities include "setting up the gear for the band." Further, Biggins confirmed that the work he was performing was essentially that of Chosen Sound.
Accordingly, Chosen Sound established that Biggins was performing work that was essentially the responsibility of Chosen Sound.

Factor Three: Power to Control Details of Work
The third factor of the borrowed servant test asks whether the special employer *959 had the power to control the details of the work performed. Sagarino, 644 So.2d at 165 (citing Shelby Mut. Ins. Co., 246 So.2d at 101, n. 5). Chosen Sound argues here that the evidence shows conclusively that Chosen Sound had control over the work Biggins was performing at the time of the accident. Chosen Sound relies on Biggins's testimony that he would "follow the instructions of whoever was in charge of the lighting and electrical on any given job," and that he was directed by Chosen Sound "the entire time [he] was there." Garrett Jones, a lighting technician for Chosen Sound, testified that Biggins was helping him set up the lighting equipment at the time of the accident, he was supervising Biggins the entire time, and he never saw Biggins performing any functions unrelated to the setup of the lighting equipment.
However, as Biggins correctly argues, direction of the work to be performed and roles in assisting the employee's performance are insufficient to prove control. See Gen. Crane, Inc. v. McNeal, 744 So.2d 1062, 1064-65 (Fla. 4th DCA 1999) (concluding that the special employer's direction of the work to be done, and its employees' roles in assisting the borrowed servant are insufficient to prove control by the special employer). Further, the record does not establish that Chosen Sound controlled Biggins's day-to-day activities, compensated him for work performed, or had the power to terminate his employment. Rafael Niemtschik, a manager with Backstage, testified that a Backstage crew chief organizes the workers and instructs the employees to perform specific tasks. When another subcontractor on the site needs labor, the subcontractor speaks with the crew chief who then designates qualified employees for the task. The testimony of Perley from Fantasma and Jones from Chosen Sound corroborates Niemtschik's testimony. Perley testified that the Backstage crew chief directs the stagehands. Jones testified that Backstage's crew chief is responsible for making sure the workers know their assignments and is in charge of the workers.
Therefore, Chosen Sound did not establish conclusively that it had the power to control the details of Biggins's work. Further, the evidence concerning the roles of Chosen Sound and Backstage in directing Biggins's work gives rise to conflicting inferences, which precludes summary judgment. See Smith, 576 So.2d at 815-16.

Help Supply Services Company
Chosen Sound argues that because Backstage is a "help supply services company" under section 440.11(2), Florida Statutes (1999), then Chosen Sound is entitled to workers' compensation immunity under section 440.11(1), Florida Statutes (1999), without regard for the three-part borrowed servant analysis. See, e.g., Derogatis, 892 So.2d at 1081 (citing § 440.11(2), Fla. Stat. (2000); Horn, 862 So.2d at 939-40; Sagarino, 644 So.2d at 165) (advising that "[a] special employer may be immune from suit on the basis of the common law special employment relationship that is premised on the borrowed-employee doctrine or on the basis of the statutory special employment relationship"). Section 440.11(2), Florida Statutes (1999), provides:
The immunity from liability described in subsection (1) shall extend to an employer and to each employee of the employer which utilizes the services of the employees of a help supply services company, as set forth in Standard Industry Code Industry Number 7363, when such employees, whether management or staff, are acting in furtherance of the employer's business. An employee so engaged by the employer shall be considered a borrowed employee of the employer, *960 and, for the purposes of this section, shall be treated as any other employee of the employer. The employer shall be liable for and shall secure the payment of compensation to all such borrowed employees as required in s. 440.10, except when such payment has been secured by the help supply services company.
A "help supply services company" is defined by OSHA Standard Industry Code Industry Number 7363, as:
Establishments primarily engaged in supplying temporary or continuing help on a contract or fee basis. The help supplied is always on the payroll of the supplying establishments, but is under the direct or general supervision of the business to whom the help is furnished.
Sagarino, 644 So.2d at 165.
There is no evidence that conclusively establishes that Backstage is a help supply services company. While Backstage might arguably be "primarily engaged in supplying temporary or continuing help on a contract or fee basis," whose employees are always on its payroll, but "under the direct or general supervision of the business to whom the help is furnished," the case law suggests that Backstage does not meet the definition of a help supply services company, on the facts of this case. Each of the cases cited by Chosen Sound interprets section 440.11(2) to apply to companies hiring workers through temporary employment agencies or employee leasing companies. Further, in each of these cases, the employer had an express contractual arrangement with the company supplying the employees. See, e.g., Folds v. J.A. Jones Constr. Co., 875 So.2d 700 (Fla. 1st DCA 2004); Watson v. Job Corp., 840 So.2d 367 (Fla. 3d DCA 2003); Caramico v. Artcraft Indus., Inc., 727 So.2d 348 (Fla. 5th DCA 1999); Maxson Constr. Co. v. Welch, 720 So.2d 588 (Fla. 2d DCA 1998). In dicta, this Court has commented that the definition of a help supply services company should be limited to situations involving day labor pools. Sagarino, 644 So.2d at 165. Here, there is conclusive evidence that Backstage and Chosen Sound had no express contractual relationship. Also, there is no conclusive evidence that Backstage is a day labor pool, a temporary employment agency, an employee leasing company, or a help supply services company, for that matter. See Derogatis, 892 So.2d at 1083 (refusing to affirm summary judgment in favor of alleged special employer absent conclusive evidence that a company contracting with a hospital to provide laparoscopic surgical equipment and corresponding support services qualified as a help supply services company).
We reverse and remand for further proceedings consistent with this opinion.
Reversed and Remanded.
STONE and SHAHOOD, JJ., concur.
NOTES
[1] Section 440.10(1)(e), Florida Statutes, has since been amended to provide that these subcontractors are protected by the exclusiveness-of-liability provisions of section 440.11 provided that: "1. The subcontractor has secured workers' compensation insurance for its employees or the contractor has secured such insurance on behalf of the subcontractor and its employees in accordance with paragraph (b); and 2. The subcontractor's own gross negligence was not the major contributing cause of the injury." See § 440.10(1)(e), Fla. Stat. (2006).
[2] The trial court does not indicate the basis for its grant of summary judgment in its order, or in the hearing transcript.