WARNER, J.
Aristides Suarez, the plaintiff below, appeals a final summary judgment for Tran-smontaigne Services, Inc. (“TSI”). The trial court found TSI immune from appellant’s negligence claim under the Florida worker’s compensation act because appellant was acting as TSI’s “borrowed servant.” Because there are material issues of fact as to the relationship of appellant to TSI, we reverse.
Appellant was employed by Gonzalez & Sons Equipment, Inc., a Miami-based contracting company that provides workers for Port Everglades. Appellant was injured while working at Port Everglades. According to appellant, a TSI employee negligently operated a boom truck owned by Transmontaigne Product Services, Inc. (“TPSI”), causing appellant to be seriously injured by an industrial hose. Gonzalez & Sons provided appellant with worker’s compensation benefits related to his accident. Appellant then sued TSI and TPSI for damages. Both answered, and TSI asserted worker’s compensation immunity as an affirmative defense based upon the borrowed servant doctrine. TSI moved for summary judgment on that ground. After an extensive hearing and the production of depositions, affidavits, and other discovery, the trial court granted the motion, entering judgment for TSI. Appellant appeals the summary judgment.
An order granting summary judgment is reviewed de novo. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000); Martins v. MRG of S. Fla., Inc., 112 So.3d 705, 707 (Fla. 4th DCA 2013). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Volusia Cnty., 760 So.2d at 130. “It is the burden of the moving party to conclusively prove that no genuine issue of material fact exists.” Martins, 112 So.3d at 707 (quoting Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 643 (Fla.1999)). In reviewing an order granting summary judgment, the evidence should be viewed in the light most favorable to the party against whom summary judgment was granted. See, e.g., St. Lucie Falls Prop. Owners Ass’n v. Morelli, 956 So.2d 1283, 1286 (Fla. 4th DCA 2007).
Where an employee covered by the worker’s compensation act is injured on the job, the employee’s sole remedy against his employer is through the provisions of the act. His employer is immune from negligence claims arising out of the same injury. § 440.11(1), Fla. Stat. (2012). Where an employee works for one employer, known as his general employer, another entity may still have immunity from a negligence claim as the employee’s special employer. Shelby Mut. Ins. Co. v. Aetna Ins. Co., 246 So.2d 98, 100-01 (Fla.1971); Sagarino v. Marriott Corp., 644 So.2d 162, 165 (Fla. 4th DCA 1994). To obtain immunity, the special employer must establish that the employee was acting as the special employer’s “borrowed servant” at the time of the work-related injury. Sagarino, 644 So.2d at 165.
“[T]here is a presumption that the employee is not a borrowed servant, but instead continues to work for and be an employee of the general employer.” Id. at 165 (citing Shelby Mut. Ins. Co., 246 So.2d at 101) (emphasis added); see also Smith v. Greg’s Crane Serv., Inc., 576 *848 So.2d 814, 816-19 (Fla. 4th DCA 1991) (reaffirming the presumption and discussing how it developed in Florida case law). To overcome this presumption, the employer must establish the following elements:
(1) there was a contract for hire, either express or implied, between the special employer and the employee; (2) the work being done at the time of the injury was essentially that of the special employer; and (3) the power to control the details of the work resided with the special employer.
Biggins v. Fantasma Prods., Inc. of Fla., 943 So.2d 952, 957 (Fla. 4th DCA 2006) (citing Sagarino, 644 So.2d at 165). The critical element is the existence of the contract for hire; the remaining factors are indicia of such a contract. Id. at 957. “The question of whether there exists an employer/employee relationship is normally reserved for the jury to determine.” Sagarino, 644 So.2d at 164. “Since the contract to be proved is frequently an implied one, factors showing a consensual relationship [between the special employer and employee] such as benefit, right of control and payment of compensation, must be considered.” Shelby, 246 So.2d at 101.
The special employer must show “ ‘deliberate and informed consent by the employee’ to the contract.” Biggins, 943 So.2d at 957 (quoting Sagarino, 644 So.2d at 165). See also Pepperidge Farm, Inc. v. Booher, 446 So.2d 1132, 1132 (Fla. 4th DCA 1984) (“We similarly place great reliance on the presence of a definite arrangement between the general and special employers ... and the employee’s knowledge thereof.”), approved by Booher v. Pepperidge Farm, Inc., 468 So.2d 985, 985-86 (Fla.1985). Courts have required this because, by entering such an employment contract, the employee effectively waives the right to sue the special employer for common law negligence due to the immunity provisions of the worker’s compensation act. See Crawford v. Fla. Steel Corp., 478 So.2d 855, 859 (Fla. 1st DCA 1985) (“[C]ourts have usually been vigilant ,in insisting upon a showing of a deliberate and informed consent by the employee before an employment relationship will be held a bar to common-law suit.”); Shelby, 246 So.2d at 100-01 (same, quoting 1A Larson, Workmen’s Compensation, § 48.10 (1967)).
Applying this law to the facts on summary judgment in this case, there remain disputed issues of fact as to whether appellant was acting as the borrowed servant of TSI. In large part, the facts are convoluted as to who employed whom in the work being done at the port.
Port Everglades is owned and operated by various corporate entities associated with a national company called Transmont-aigne, Inc. TSI and TPSI are both subsidiaries of Transmontaigne, Inc. TPSI owns all of the “rolling stock” at the port, including boom trucks and transport trucks. TSI employs the “operational” workers at the port. The terminal real estate and the fuel storage tanks at the port are owned by an entity called Tran-smontaigne Partners, LP, which is not a subsidiary of Transmontaigne, Inc. and is not a party to this lawsuit. Another entity that is not a party to this lawsuit, Tran-smontaigne, GP, LLC, pays Gonzalez & Sons an hourly rate for its employees’ work at the port.
According to the record, Karl Bernard, a Transmontaigne representative, and Juan Carlos Gonzalez, president of Gonzalez & Sons, would hold a yearly meeting to determine how many workers were needed at Port Everglades, and Gonzalez & Sons would verbally agree to provide these workers. Neither Bernard nor Gonzalez *849 were sure which Transmontaigne corporate entity was negotiating this verbal agreement. Bernard testified that he was “not certain on the relationship between Gonzalez [& Sons] and exactly which entity was contracted for those services.” When asked whether Gonzalez & Sons had a relationship with TSI, Bernard stated, “[n]o, I don’t believe so.” Bernard’s testimony was also somewhat ambiguous as to which entity employs him. Although he testified that he was TSI’s southeast regional manager, he agreed he was listed on an interrogatory as southeast area manager for the stand-alone company Tran-smontaigne Partners, LP. He explained, “Transmontaigne Partners, LP owns the terminal assets and I manage those terminal assets.”
Gonzalez at first testified that he thought Gonzalez & Sons’ verbal agreement was with TPSI, not TSI. Ultimately, he concluded that he just knew the entity as “Transmontaigne.” According to Gonzalez & Sons’ records, Gonzalez & Sons was being paid for appellant’s work at the port by an entity called Transmontaigne GP, LLC. Although TSI argues that the agreement must have been with TSI because Bernard worked for TSI, Bernard’s testimony on this point was ambiguous and he at one point denied that the agreement was with TSI. While the evidence established that there was a verbal agreement between Gonzalez & Sons and some Tran-smontaigne entity regarding appellant’s work at the port, it did not establish conclusively that the agreement was with TSI.
Appellant filed an affidavit opposing summary judgment stating that he was not aware of a company called TSI and that he had no idea of a contract for his services between Gonzalez & Sons and TSI or “any Transmontaigne entity.” During his deposition, he admitted that he knew he was “working doing jobs for Transmontaigne” at the port and was aware that, although he was working for Gonzalez & Sons, “the service was for Transmontaigne.” He did not know the difference between the Tran-smontaigne corporate entities, stating, “I just know Transmontaigne.” On cross-examination, he admitted that he was aware that “Transmontaigne” was paying Gonzalez & Sons for his services in some manner.
TSI argues that appellant’s consent to employment with TSI can be inferred from his acceptance of TSI’s direction and control. We rejected this proposition in Big-gins, and held that acceptance of direction from an alleged special employer is not sufficient, by itself, to establish that the employee consented to a contract for hire. 943 So.2d at 958 (relying on Austin v. Duval Cnty. Sch. Bd., 657 So.2d 945, 950 (Fla. 1st DCA 1995)).
TSI seems to ignore the confusion regarding which employee worked for which Transmontaigne entity, and contends that they all worked on the same projects. It wishes to disregard the separate entities involved in work at Port Everglades and simply construes the evidence as showing that the employees all worked for TSI and not for any other entity. Yet the evidence is not conclusive that all employees worked for TSI. Nor is it conclusive that it was TSI employees who exercised direction and control over appellant, or the extent of that direction and control.
Given the presumption that appellant was not a borrowed servant, see Greg’s Crane Serv., 576 So.2d at 816-19, and the fact that TSI had the burden to establish a record devoid of material factual disputes, see Martins, 112 So.3d at 707, the trial court erred in entering summary judgment for TSI. It is not clear which Transmont-aigne entity contracted for appellant’s ser.vices, supervised him, or benefited from his work. It is also unclear whether TSI *850 had the power to control the details of appellant’s work, as there was testimony that appellant was partly supervised by Gonzalez & Sons’ employees. We therefore reverse and remand for further proceedings.
STEVENSON and GERBER, JJ., concur.