BENTON, C.J.
Ivy Fossett appeals the final summary judgment entered against her in a negligence action she brought against Southeast Toyota Distributors, LLC (SET). We affirm. The trial court ruled that SET had immunity from suit under section 440.11(2), Florida Statutes (2006). Even though the evidence before the summary judgment court did not rule out the possibility that, at the time of the accident, she was under the immediate supervision of another employee of the same help supply services company that had her on its payroll, the undisputed facts demonstrated that Ms. Fossett was under SET’s “general supervision” when she was injured.
The record before the trial court at the time it entered summary judgment consisted of Ms. Fossett’s deposition and a copy of a contract between SET and Adec-co, a help supply services company. According to her deposition, Ms. Fossett originally sought employment from SET itself, but was directed to Adecco, from whom SET leased employees. In answer to a question about how she had happened to apply to work for Adecco, she testified, “I looked in the phone book and called— actually, I was seeking to get on with Southeast Toyota, and I called — I was told that I had to contact Adecco.” Adecco hired her, then sent her to work at SET under the terms of the contract between SET and Adecco.
As an Adecco employee, Ms. Fossett was assigned to stand near the exit of an automated car wash on SET’s property, where she was to get into cars after they had been washed and drive them to an adjacent lot. After about three months on the job, a car mistakenly left in gear when sent through the car wash ran her over and caused serious injury. On that account, she claimed workers’ compensation benefits from Adecco (and eventually settled her claim for workers’ compensation benefits).
When Ms. Fossett also sued SET alleging SET’s negligence was responsible for her injury, SET moved for summary judgment. SET argued that, because it had contracted with Adecco to supply Ms. Fos-sett and other temporary employees to work for SET, SET was immune under section 440.11(2) from liability for simple negligence to any Adecco employee injured doing SET’s work. Section 440.11 provides, in relevant part:
(1) The liability [for workers’ compensation benefits] of an employer prescribed in s. 440.10 shall be exclusive and in place of all other liability, including vicarious liability, of such employer to any third-party tortfeasor and to the employee, the legal representative thereof
*1157 ... and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except as follows:
(a) If an employer fails to secure payment of compensation as required by this chapter....
(b) When an employer commits an intentional tort that causes the injury or death of the employee....
[[Image here]]
(2) The immunity from liability described in subsection (1) shall extend to an employer and to each employee of the employer which utilizes the services of the employees of a help supply services company, as set forth in Standard Industry Code Industry Number 7363, when such employees, whether management or staff, are acting in furtherance of the employer’s business. An employee so engaged by the employer shall be considered a borrowed employee of the employer, and, for the purposes of this section, shall be treated as any other employee of the employer. The employer shall be liable for and shall secure the payment of compensation to all such borrowed employees as required in s. 440.10, except when such payment has been secured by the help supply services company.
§ 440.11, Fla. Stat. (2006) (emphasis supplied). OSHA Standard Industry Code Industry Number 7363 defines a “help supply services company” as an entity “primarily engaged in supplying temporary or continuing help on a contract or fee basis.” St. Lucie Falls Prop. Owners Ass’n v. Morelli, 956 So.2d 1283, 1285 (Fla. 4th DCA 2007) (citing Sagarino v. Marriott Corp., 644 So.2d 162, 165 (Fla. 4th DCA 1994)).
The OSHA standard in effect on the date the statute was enacted controls. See State v. Camil, 279 So.2d 832, 834 (Fla.1973) (holding that a statute cannot prospectively incorporate by reference subsequently enacted federal law or subsequently adopted federal administrative rules). On the date section 440.11(2) took effect— October 1, 1989, see ch. 89-289, § 8, at 1749-50, 1786, Laws of Fla. — OSHA Standard Industry Code Industry Number 7363 listed employee leasing services, help supply services, temporary help services, and labor pools as examples of help supply services companies. See Office of Mgmt. & Budget, Exec. Office of the President, Standard Industry Classification Manual (1987), available at http://osha.gov/pls/imis/ sic_dmanual.html. “The help supplied is always on the payroll of the supplying establishments, but is under the direct or general supervision of the business to whom the help is furnished.” Morelli, 956 So.2d at 1285 (citing Sagarino, 644 So.2d at 165).
On appeal, Ms. Fossett does not dispute that Adecco is primarily engaged in supplying (temporary or continuing) help to other enterprises on a contract or fee basis, nor does she dispute that she was on Adecco’s payroll at the time of the industrial accident, doing SET’s work. She does argue, however, that the record does not dispel all doubt as to whether she was, as a matter of fact, under the direct or general supervision of SET when the accident occurred. In arguing this point, neither party contends that there is any dispute about the primary facts, or that they require further development. Both parties rely on the same evidence: Ms. Fos-sett’s deposition and the contract between SET and Adecco.
“Long before the enactment of the statutory special employment provision for employees of help supply services companies, the common law recognized the ‘borrowed servant’ doctrine.” Morelli, 956 So.2d at 1286. Under this common law doctrine, one employer can “lend” its em *1158 ployee to another “special employer.” A special employer qualifies as such where “(1) there was a contract for hire, either express or implied, between the special employer and the employee; (2) the work being done at the time of the injury was essentially that of the special employer; and (3) the power to control the details of the work resided with the special employer.” Id. (emphasis supplied) (citing Shelby Mut. Ins. Co. v. Aetna Ins. Co., 246 So.2d 98, 101 n. 5 (Fla.1971)). See also Coleman v. Mini-Mac Maint. Serv., Inc., 706 So.2d 393, 395 (Fla. 1st DCA 1998) (“Florida courts consider three factors when determining whether a worker was a borrowed servant: (1) whether a contract of hire, either express or implied, existed between the employee and the special employer; (2) whether the work done was essentially that of the special employer; and (3) whether the special employer has the right to control the details of the work”) (emphasis supplied).
At issue here, too, is the legal power or right to control the details of the work of the “borrowed servant.” See Hazealeferiou v. Labor Ready, 947 So.2d 599, 603 (Fla. 1st DCA 2007) (“In Florida, the [borrowed servant] doctrine’s specific application to employee leasing arrangements is embodied in section 440.11(2)”); Derogatis v. Fawcett Mem’l Hosp., 892 So.2d 1079, 1081 (Fla. 2d DCA 2004) (“A special employer may be immune from suit on the basis of the common law special employment relationship that is premised on the borrowed-employee doctrine or on the basis of the statutory special employment relationship, § 440.11(2).”).
The “general supervision” section 440.11(2) contemplates, in incorporating OSHA Standard Industry Code Industry Number 7363, is the legal power to direct the details of the work of the help supply services company employee. The crucial question is not whether a SET manager supervised Ms. Fossett in fact as she parked cars and waited in between, but whether SET or its designee had the legal right or power to control the details of her work.
The contract between SET and Adecco plainly states that “services to be performed by employees provided by [Adecco] will be performed under the direction, supervision and control of [SET].” The contract unequivocally gave SET the right to control Ms. Fossett’s work. Although Ms. Fossett testified on deposition that she was paid by Adecco, that she never received instruction from SET on how to do her job, and that her personal supervisor was an Adecco employee, the legal right of control the contract conferred on SET is dispositive. The present case turns on “general supervision,” not “direct supervision.” Any factual question about the extent to which SET exercised the right of control it undeniably enjoyed is immaterial.
Affirmed.
WEBSTER and VAN NORTWICK, JJ„ concur.