UNITED RENTALS, INC., Plaintiff,

v.

MID–CONTINENT CASUALTY
COMPANY, et al.,
Defendants.

Case No. 11–61586–CIV.

United States District Court,
S.D. Florida.

Feb. 16, 2012.

David E. Schroeder, Tribler Orpett & Meyer, P.C., Chicago, IL, Randy Richard Dow, Page Mrachek Fitgerald & Rose, West Palm Beach, FL, for Plaintiff.

Ronald Lee Kammer, Melissa Anne Gillinov, Hinshaw & Culbertson LLP, Miami, FL, for Defendants.

### ORDER

CECILIA M. ALTONAGA, District Judge.

**THIS CAUSE** came before the Court on Mid–Continent Casualty Company's ("Mid–Continent['s]") Motion for Summary Judg-ment Regarding United Rentals ("Motion") [ECF No. 62], filed December 6, 2011. The Court has carefully considered the parties' written submissions, the record, and applicable law.

## I. FACTUAL BACKGROUND

A pending lawsuit in Florida state court ("State Court Complaint"), filed on December 4, 2009 by Larry K. Ferguson, as the Personal Representative of the Estate of Larry C. Ferguson (the "Estate"), alleges that on May 19, 2008, Larry C. Ferguson ("L.C. Ferguson") "sustain[ed] serious personal injuries resulting in his death while operating a [scissor lift] ... while at a work site in ... Broward County, Florida .... [during] the course of his employment...." (State Court Compl. ¶ 19 [ECF No. 14–1]; see Mid–Continent's Statement of Material Facts ("Mid–Continent's SMF") ¶¶ 8, 9 [ECF No. 63]). The Estate's lawsuit is brought against multiple defendants, including United Rentals, Inc. ("United Rentals") and General Interior Systems Southern, Inc. ("General Southern"). (See State Court Compl. 1–2). Specifically, the Estate alleges claims against United Rentals for strict liability and negligence based on United Rentals's own actions and omissions. (See id. ¶¶ 156–196). The Estate did not sue United Rentals for General Southern's actions or omissions.[1] (See Mid–Continent's SMF ¶ 49; United Rentals's SMF ¶ 50 [2,3]).

---

1. The evidence provided by Mid–Continent to support this factual statement is General Southern's Corrected Answer and Affirmative Defenses ... ("General Southern's Answer") [ECF No. 57] to Mid–Continent's Amended Third–Party Complaint ("Third–Party Complaint") [ECF No. 51]. However, in its Answer, General Southern does not admit "that the Estate has not sued United Rentals' [sic] for [General Southern's] actions or omissions," as set forth in paragraph 49 of Mid–Continent's SMF, but rather, that "[t]he Estate has not sued [General Southern] for United Rental's [sic] actions or omissions." (Third–Party Complaint ¶ 9; General Southern's Answer ¶ 9). However, United Rentals does not dispute paragraph 49. (See United Rentals's Statement of Undisputed Material Facts ("United Rentals's SMF") ¶ 50 [ECF No. 69]). Further, upon review of the record, the Court concurs with the parties that this statement is correct. There being no dispute by the parties and no record evidence to the contrary, the Court includes this statement in the undisputed factual background to this Order.

2. The paragraph numbering in United Rentals's SMF became misnumbered between paragraphs 47 and 48. (See United Rentals's SMF ¶¶ 47–48). When citing to this document, the Court employs the paragraph numbers provided by United Rentals.

The scissor lift used by L.C. Ferguson was leased to General Southern by United Rentals pursuant to a Rental Agreement. (*See* Mid–Continent's SMF ¶ 6; Rental Agreement [ECF No. 13–1] ). The Rental Agreement provides that General Southern agrees to indemnify United Rentals for any claims asserted against United Rentals relating to, for example, the "operation" of the scissor lift, and that General Southern agrees to "maintain and carry" insurance to "cover any damage or liability arising from the ... use ... of the [scissor lift] during the entire Rental Period." (Rental Agreement ¶¶ 3, 18;[4] *see* Mid–Continent's SMF ¶ 7; United Rentals's SMF ¶ 52). Mid–Continent issued to General Southern two insurance policies (the "insurance policies") for the period of August 1, 2007 to August 1, 2008, which cover the date General Southern leased the scissor lift from United Rentals and the date of L.C. Ferguson's accident. (*See* Mid–Continent's SMF ¶¶ 1, 4, 6). The two policies are policy 04–GL–000683641 ("Primary Policy") [ECF No. 17–1] and policy 04–XS–150893 ("Excess Policy") [ECF No. 18–1]. (*See* Mid–Continent's SMF ¶¶ 1, 4).

3. Mid–Continent admonishes United Rentals because United Rentals's SMF, as filed, is nineteen pages long, exceeding the ten-page limit of Local Rule 56.1(a)(1). (*See* Mid–Continent's Resp. to United Rentals's SMF, at 1 [ECF No. 71] ). The Court does not disregard United Rentals's SMF for failure to comply with the local rules or failure to request leave to exceed the page limitation. Indeed, much of United Rentals's SMF recites Mid–Continent's Statement of Facts (although Local Rule 56.1(a)(1) specifically informs that such recitation is unnecessary), and United Rentals's presentation of new facts comprises only two pages. (*See* United Rentals's SMF, at 16–18). The Court has "broad discretion" to overlook non-compliance with the local rules, *see, e.g., Reese v. Herbert,* 527 F.3d 1253, 1270 (11th Cir.2008) (noting that district court had "broad discretion" to overlook non-compliance with local rule regarding summary judgment evidentiary matters), and it is equally within the Court's discretion to accept United Rentals's SMF.

4. Paragraphs 3 and 18 of the Rental Agreement between United Rentals and General Southern provide:

> **INDEMNITY / HOLD HARMLESS.** To the fullest extent permitted by law, Customer agrees to indemnify, defend and hold United harmless from and against any and all liability, claim, loss, damage or costs (including, but not limited to, attorneys' fees, loss of profit, business interruption or other special or consequential damages, damages relating to bodily injury, damages relating to wrongful death) caused by or in any way arising out of or related to the operation, use, maintenance, instruction, possession, transportation, ownership or rental of the Equipment, including, but not limited to, whenever such liability, claim, loss, damage or cost is founded, in whole or in part, upon any negligent or grossly negligent act or omission of United or the provision of any allegedly defective product by United. This indemnity provision applies to any claims asserted against United based upon strict or product liability causes of action, breach of warranty or under any other theory of law.
>
> ....
>
> **CUSTOMER'S INSURANCE COVERAGE.** Customer agrees to maintain and carry, at its sole cost, adequate liability, physical damage, public liability, property damage and casualty insurance for the full replacement cost of the Equipment, including, but not limited to all risks of loss or damage covered by the standard extended coverage endorsement, to cover any damage or liability arising from the handling, transportation, maintenance, operation, possession or use of the Equipment during the entire Rental Period. When requested, Customer shall supply to United proof of such insurance by Certificate of Insurance clearly setting forth the coverage for the Equipment and naming United as loss payee and additional insured; such insurance and evidence thereof to be in amounts and form satisfactory to United. The Certificate of Insurance and policy shall provide that United shall receive not less than 30 days' notice prior to any cancellation of the insurance required hereunder.

(Rental Agreement ¶ 3 (capitalization of text omitted); *id.* ¶ 18).

The insurance policies provide that other entities aside from General Southern can be insureds under the policies,[5] for example, if an "insured contract"[6] exists between that entity and General Southern. (*See* Mid–Continent's SMF ¶¶ 3, 5).

## II. PROCEDURAL BACKGROUND

In response to the State Court Complaint, on May 10, 2010, United Rentals filed cross-claims against General Southern ("State Cross–Claims") [ECF No. 51–3]. (*See* Mid–Continent's SMF ¶ 46). Pursuant to the Rental Agreement, United Rentals seeks recovery from General Southern for contractual indemnification and breach of contract. (*See* State Cross–Claims ¶¶ 21–29); (Rental Agreement ¶¶ 3, 18).

United Rentals then initiated this action on July 18, 2011 seeking (1) a declaration that United Rentals is covered under the Primary Policy and Excess Policy, and (2) relief for Mid–Continent's breach of those policies. (*See* Mid–Continent's SMF ¶ 47; Compl. 4–8). Specifically, United Rentals alleges that it is entitled to coverage under the Primary Policy as an "additional in-

sured" because the Primary Policy extends coverage to a party to an "insured contract" with General Southern, and that the Rental Agreement is such an "insured contract." (*See* Compl. 5). United Rentals also asserts that it is entitled to coverage under the Excess Policy as an "additional insured" because General Southern agreed to provide insurance to United Rentals (*see* Rental Agreement ¶ 18), and the Excess Policy extends coverage to United Rentals due to that agreement. (*See* Compl. 6). Because Mid–Continent has refused to defend, indemnify and provide coverage to United Rentals, United Rentals alleges that Mid–Continent breached the insurance policies. (*See id.* 4, 7, 8). Further, although not specifically alleged in the Complaint, United Rentals maintains it is entitled to coverage under the Primary Policy as an indemnitee under the policy's supplementary payments provision.[7] (*See* Resp. 2 [ECF No. 68]; *see also* Primary Policy 28).

On October 3, 2011, Mid–Continent filed a Third–Party Complaint [ECF No. 51] against General Southern seeking a decla-

---

5. The policies indicate that General Southern is the named insured. (*See* Primary Policy 2 (declarations); *id.* 29; Excess Policy 2 (declarations); *id.* 11). The Primary Policy also includes as an insured "[a]ny person or organization for whom the named insured has agreed by written 'insured contract' to designate as an additional insured subject to all provisions and limitations of this policy." (Primary Policy 55). The Excess Policy also includes as an insured: (1) "Any person or organization qualifying as an insured under any policy of underlying insurance . . . ."; (2) "Any person or organization for whom you have agreed in writing prior to any occurrence or offense to provide insurance such as is afforded by this policy, but only with respect to operations performed by you or on your behalf, or facilities owned or used by you." (Excess Policy 12).

6. The Primary Policy defines an "insured contract" as:

> That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for bodily injury or property damage to a third person or organization, provided the bodily injury or property damage is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

(Primary Policy 45 (internal quotation marks omitted)); *see* Excess Policy 18 (using identical language).

7. See *infra* 1316 for relevant text of the supplementary payments provision of the Primary Policy.

ration that the insurance policies do not require Mid–Continent to defend or indemnify General Southern against United Rentals's State Cross–Claims. (*See id.* 9–14).

In this Motion, Mid–Continent seeks the entry of a summary judgment finding that neither of the insurance policies covers (1) United Rentals with respect to the Estate's claims against it, nor (2) General Southern for United Rentals's State Cross–Claims against it. (*See* Mot. 1, 14–15).

### III. LEGAL STANDARD

Summary judgment shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* FED.R.CIV.P. 56(a), (c). "[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir.1995)). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Burgos v. Chertoff,* 274 Fed.Appx. 839, 841 (11th Cir.2008) (quoting *Allen v. Tyson Foods Inc.,* 121 F.3d 642, 646 (11th Cir.1997) (internal quotation marks omitted)). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Channa Imps., Inc. v. Hybur, Ltd.,* No. 07–21516–CIV, 2008 WL 2914977, at *2 (S.D.Fla. Jul. 25, 2008) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

### IV. ANALYSIS

■ There are no genuine issues of material fact concerning the content or execution of the Rental Agreement or insurance policies. (*See* Mid–Continent's SMF ¶¶ 1–7; United Rentals's SMF ¶¶ 1–7). "[W]hen the essential facts of the case are not in dispute, it is appropriate for a district court to interpret an insurance contract to determine whether any ambiguities exist as a matter of law." *Trailer Bridge, Inc. v. Illinois Nat. Ins. Co.,* 657 F.3d 1135, 1141 (11th Cir.2011) (citation omitted). "Under Florida law, insurance contracts are construed according to their plain meaning. Ambiguities are construed against the insurer and in favor of coverage. But a policy provision is ambiguous only if susceptible to more than one reasonable interpretation...." *Shaw v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 605 F.3d 1250, 1252 (11th Cir.2010) (internal quotation marks and citations omitted); *see also Sphinx Intern., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 412 F.3d 1224, 1228 (11th Cir.2005) (in cases involving exclusions to insurance contracts, "the rule is even clearer in favor of strict construction against the insurer").

The three primary issues presented to the Court in this Motion are purely questions of law: (1) whether United Rentals is an additional insured under either the Primary Policy or the Excess Policy; (2) whether United Rentals is a covered indemnitee under the Primary Policy's supplemental payments provision; and (3) whether Mid–Continent has a duty to defend or indemnify General Southern against United Rentals's State Cross–Claims. These three questions are addressed below.

### A. Whether United Rentals Is an Additional Insured under Either the Primary Policy or the Excess Policy

■ In order for United Rentals to be covered under the Primary Policy as an

additional insured, the Rental Agreement between United Rentals and General Southern must be a legally valid "insured contract" that complies with the terms of the Primary Policy. (*See* Primary Policy 55); *supra* n. 2 (relevant text). Similarly, in order for United Rentals to be covered under the Excess Policy as an additional insured, United Rentals must either be covered under the Primary Policy as an additional insured ("clause 'e' "), or the Rental Agreement between United Rentals and General Southern must be a written agreement that complies with the terms of the Excess Policy ("clause 'f' "). (*See* Excess Policy 12); *supra* n. 2 (relevant text). The portions of the Rental Agreement that are of consequence to this analysis are Paragraphs 3 and 18, which require General Southern to indemnify United Rentals and to maintain and carry certain types of insurance coverage. (*See* Rental Agreement ¶ 3 ("indemnification clause"); *id.* ¶ 18 ("insurance clause")); *supra* n. 3 (relevant text).

The Primary Policy narrowly defines "insured contract" to mean "[t]hat part of any other contract or agreement . . . under which you assume the tort liability of another party to pay for bodily injury or property damage to a third person . . . , provided the bodily injury or property damage is *caused, in whole or in part, by you or by those acting on your behalf.*"[8] (Primary Policy 45 (internal quotation marks omitted) (emphasis added)). Clause "f" of the Excess Policy does not use the term "insured contract," but similarly includes as an insured, "[a]ny person or organization for whom you have agreed in writing prior to any occurrence or offense to provide insurance such as is afforded by this policy, *but only with respect to operations performed by you or on your behalf,*

or *facilities owned or used by you.*" (Excess Policy 12 (emphasis added)). Under the plain language of both of these provisions, coverage is extended by an "insured contract" or written agreement only for vicarious liability on behalf of General Southern. *See Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So.2d 161, 165 (Fla.2003) ("[I]nsurance contracts must be construed in accordance with the plain language of the policy." (citing *Auto–Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla.2000); *Prudential Prop. & Cas. Ins. Co. v. Swindal*, 622 So.2d 467, 470 (Fla. 1993))).

Here, the Estate's State Court Complaint alleges claims against United Rentals premised solely on theories of strict liability and negligence arising from United Rentals's own acts or omissions. (*See* State Court Compl. ¶¶ 156–196). Thus, even if the Rental Agreement were a valid contract or agreement, the coverage sought by United Rentals is not contemplated by the plain terms of the insurance policies, which limit an "insured contract" or written agreement—by which Mid–Continent would extend coverage of the insurance policies—to agreements concerning vicarious liability. *See Mid–Continent Cas. Co. v. Constr. Servs. & Consultants, Inc.*, No. 9:06–cv–80922–KAM, 2008 U.S. Dist. LEXIS 30718, at *8–9 (S.D.Fla. Mar. 31, 2008) (arriving at the same conclusion based on the plain terms of an insurance policy that employed identical relevant language to that at issue in the Primary Policy). This limitation extends to clause "e" of the Excess Policy, which provides that an insured includes "[a]ny person or organization qualifying as an insured under any policy of underlying insurance" (Excess Policy 12), i.e., an additional in-

---

**8.** The Excess Policy uses identical language to define "insured contract." (*See* Excess Policy 9); *supra* n. 3.

sured under the Primary Policy. As explained, United Rentals is not an additional insured under the Primary Policy with respect to the Estate's claims, and therefore is also not an additional insured under clause "e."

Further, the Court observes that even if, pursuant to the terms of the insurance policies, the Rental Agreement is construed to be an "insured contract" or "written agreement" by which United Rentals would be covered by the policies, under Florida law,

> Any portion of any agreement or contract for or in connection with, or any guarantee of or in connection with, any construction, alteration, repair, or demolition of a building, structure, appurtenance, or appliance, including moving and excavating associated therewith, between an owner of real property and an architect, engineer, general contractor, subcontractor, sub-subcontractor, or materialman or any combination thereof wherein any party referred to herein promises to indemnify or hold harmless the other party to the agreement, contract, or guarantee for liability for damages to persons or property *caused in whole or in part by any act, omission, or default of the indemnitee* arising from the contract or its performance, *shall be void and unenforceable unless the contract contains a monetary limitation on the extent of the indemnification* that bears a reasonable commercial relationship to the contract and is part of the project specifications or bid documents, if any.

FLA. STAT. § 725.06(1) (emphasis added).

Paragraph 3 of the Rental Agreement indicates General Southern agrees to "indemnify, defend and hold United harmless" from all claims and liability

> caused by or in any way arising out of or related to the operation, use, maintenance, instruction, possession, transpor-

tation, ownership or rental of the Equipment, including, but not limited to, whenever such liability[ ] ... is founded, in whole or in part, upon any negligent or grossly negligent act or omission of United or the provision of any allegedly defective product by United. This indemnity provision applies to any claims asserted against United based upon strict or product liability causes of action, breach of warranty or under any other theory of law.

(Rental Agreement ¶ 3). However, the Rental Agreement contains no monetary limitation on the extent of indemnification as required by the Florida statute. (*See id.*). Hence, to the extent paragraph 3 of the Rental Agreement requires General Southern to indemnify United Rentals for its own acts, omissions, or defaults, that portion of the Rental Agreement is void under section 725.06. *See, e.g., Mid–Continent Cas. Co.*, 2008 U.S. Dist. LEXIS 30718, at *9 ("Section 725.06 of the Florida Statutes only voided that portion of the Contract that attempted to impose on CSCI a contractual obligation to defend and indemnify Transeastern from its own acts or omissions.").

As the Court previously observed, the Estate's State Court Complaint alleges claims against United Rentals premised solely on theories of strict liability and negligence arising from United Rentals's own acts or omissions. (*See* State Court Compl. ¶¶ 156–196). Therefore, because the indemnification clause of the Rental Agreement is void as to United Rentals's own "acts, omissions, or defaults" per Florida Statute section 725.06(1), there is no legally valid insured contract or written agreement pursuant to which United Rentals can be considered an additional insured under either of the insurance policies with respect to the Estate's claims. Additionally, given that the indemnification clause of the Rental Agreement is void as to United

Rentals's own acts or omissions, it necessarily follows that United Rentals is also not an "additional insured" under clause "e" of the Excess Policy because it is not an insured under the Primary Policy as to its own acts or omissions. *See supra* 1314.

Notably, United Rentals "concedes that the cases cited by Mid–Continent on [this] issue are compelling," and offers no contrary argument as to whether United Rentals is an additional insured under the Primary Policy. (Resp. 2; *see also* Mot. 6–7 (cases cited therein)). Despite this concession, United Rentals maintains that it is an additional insured under the Excess Policy, although its precise argument in support is unclear. (*See* Resp. 4–5). United Rentals appears to suggest that because the State Court Complaint also alleges claims of negligence against General Southern, the "possibility" is "raised" that the Estate's claims against United Rentals "arise[ ] from [General Southern's] operations, thereby triggering the additional insured provision in the excess policy." (Resp. 5). By this language, the Court presumes United Rentals is referring to clause "f," as that is the only relevant provision that uses the word "operations."

A plain reading of the State Court Complaint reveals that the Estate does not premise any of its claims against United Rentals on the operations of General Southern. (*See* State Court Compl. ¶¶ 156–196). Further, United Rentals acknowledges that "[i]n [General Southern's] answer to the [T]hird-party [C]omplaint, [General Southern] admitted that the Estate has not sued United Rentals' [sic] for [General Southern's] actions or omissions." (United Rentals's SMF ¶ 50). Thus, although United Rentals asserts that "[i]t is clear that the underlying plaintiff's claims are alleged to arise, at least in part, from [General Southern]'s operations" (Resp. 5), without more (e.g., an explanation as to

what portion of the Estate's claims against United Rentals concerns "operations" performed by General Southern, or on behalf of General Southern), this argument lacks merit.

## B. Whether United Rentals Is an Indemnitee under the Primary Policy's Supplemental Payments Provision

██ The supplemental payments provision of the Primary Policy states, in relevant part:

> If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:
>
> a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract"; . . .

(Primary Policy 28). Thus, for United Rentals to be considered an indemnitee covered by this provision, there must exist a valid insured contract that provides General Southern will assume the liability for a lawsuit against United Rentals, such as that brought by the Estate. However, for the reasons previously stated in Part III. A., namely, that an "insured contract" per the terms of the Primary Policy and Florida law includes only those agreements that contemplate indemnity (up to a monetary limit) for vicarious liability, there is no valid insured contract pursuant to which United Rentals can be considered an indemnitee entitled to coverage under the supplementary payments provisions of the Primary Policy.

United Rentals's argument—that paragraph 18 of the Rental Agreement requires General Southern to carry and maintain insurance that covers United

Rentals against suits such as the Estate's, and therefore is an "insured contract"— misses the mark. (*See* Resp. 4). Indeed, an "insured contract" per the terms of the Primary Policy issued by Mid–Continent contemplates only vicarious liability. *See supra* Part III.A. Thus, even if United Rentals's interpretation of paragraph 18 is accurate, that does not change the fact that paragraph 18 of the Rental Agreement does not suffice as an "insured contract" under the Primary Policy.

### C. Whether Mid–Continent Has a Duty to Defend or Indemnify General Southern against United Rentals's Cross-claims

■ United Rentals brings two counts premised on the Rental Agreement in its Cross–Claims against General Southern: one for contractual indemnification required under the Rental Agreement, and the other for breach of the Rental Agreement. (*See* State Cross–Claims 11, 12). Mid–Continent asserts that the insurance policies do not compel it to defend or indemnify General Southern against either of these cross-claims because United Rentals seeks only economic damages from General Southern. (*See* Mot. 13).

The "insuring agreement" of each of the policies provides in relevant part: "We will pay those sums that the insured becomes legally obligated to pay as damages *because of bodily injury or property damage to which this insurance applies*. We will have the right and duty to defend the insured against any suit seeking *those damages*" (Primary Policy 22 (internal quotation marks omitted) (emphasis added)), and

> We will indemnify the insured for ultimate net loss in excess of the retained limit *because of bodily injury or property damage to which this insurance applies*. We will have the right to associate with the underlying insurer and the insured to defend any claim or suit seeking damages *for bodily injury or property damage to which this insurance applies*.

(Excess Policy 4 (emphasis added)). The parties have not identified any other provisions in the policies to which the Court should turn to determine whether the scope of coverage afforded by the policies includes a defense against or indemnification of claims for breach of contract or contractual indemnification.

According to Mid–Continent, the insurance policies do not provide indemnification or defense coverage for economic damages, but rather, cover only bodily injury[9] and property damage.[10] (*See* Mot. 13). United Rentals does not specifically dispute the characterization of the relief it seeks as economic damages, does not specifically dispute that the policies cover only bodily injury or property damage, and also "takes no position on whether [General Southern] might have coverage for United Rentals' claim for breach of contract." (Resp. 6). Further, United Rentals's sole argument against Mid–Continent's Motion on this issue rests on whether the Rental Agreement is a valid "insured contract." General Southern did not file any response

---

**9.** Both policies define "bodily injury" as: "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Primary Policy 33; Excess Policy 17).

**10.** The policies define "property damage" as:
a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that cause it; or
b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.
(Primary Policy 35 (internal quotation marks omitted); Excess Policy 20).

to the Motion. The Court agrees that the plain language of the policies provides that they cover only "bodily injury or property damage to which this insurance applies." (Primary Policy 22; Excess Policy 4 (employing same language)).

Admittedly, United Rentals likely would not have asserted its Cross–Claims against General Southern had Mid–Continent consented to insure United Rentals against the Estate's claims—which are premised on the bodily injury of L.C. Ferguson. However, while United Rentals's Cross–Claims against General Southern may be motivated by the potential liability it may incur for L.C. Ferguson's bodily injuries, United Rentals's basis for seeking *its own* relief from General Southern is not founded on any "bodily injury" or "property damage," but rather is rooted in contract. Yet the Court has not found, nor has any party directed the Court to, any provision in the insurance policies whereby General Southern is protected against contract-related claims such as those raised by United Rentals. Thus, based on the plain language of the policies, the Court finds that General Southern is not covered by the insurance policies with respect to United Rentals's claims for breach of contract and contractual indemnification.

Even if the insurance policies can be read to include the "economic damages" sought in United Rentals's claims for breach of contract and contractual indemnification within the policies' definitions of "bodily injury" or "property damage," Mid–Continent's policies *do not* provide coverage to General Southern in instances where "the insured[, General Southern,] is obligated to pay damages by reason of the assumption or liability in a contract or agreement," *except* if the liability is "[a]ssumed in contract or agreement that is an insured contract. . . ." (Primary Policy 23 (internal quotation marks omitted); *see* Excess Policy 5 (using identical language)).

As previously explained, there is no valid "insured contract" between General Southern and United Rentals with respect to the strict liability and negligence claims alleged by the Estate. *See supra* Part III.A. Thus, even if a contractual indemnification claim or breach of contract claim can be construed to fall under the scope of either policy's insuring agreement, there exists no valid "insured contract"—with respect to United Rentals's own actions and omissions—pursuant to which the insurance policies' coverages could attach.

In sum, a plain reading of the insurance policies compels the Court to conclude that General Southern is not covered by the insurance policies as to both of these crossclaims alleged by United Rentals.

## V. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Motion [ECF No. 62] is **GRANTED.**