DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MID-CONTINENT CASUALTY COMPANY,**
an Oklahoma corporation,
Appellant,

v.

**ROYAL CRANE, LLC** d/b/a **HUNTER CRANE,** as assignee of action from
**CLOUTIER BROTHERS, INC., W.F. ROEMER INSURANCE AGENCY,
INC.,** a Florida corporation, and **FLORIDA HOME BUILDERS
INSURANCE, INC.,**
Appellees.

No. 4D13-3496

[June 10, 2015]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jeffrey E. Streitfeld, Judge; L.T. Case No. 11-019302 (07).

James H. Wyman, Ronald L. Kammer, and Edward T. Sylvester of Hinshaw & Culbertson LLP, Coral Gables, for appellant.

David P. Herman, Michael G. Shannon, and Rollin M. Smith of Murray, Morin & Herman, P.A., Coral Gables, for appellee, Royal Crane, LLC d/b/a Hunter Crane, as assignee of action from Cloutier Brothers, Inc.

GROSS, J.

In this case, a crane rental agreement contained an indemnification clause requiring the lessee to indemnify the lessor for all damages arising from the use of the crane. An accident occurred and the victim sued the lessor, who sought indemnification from the lessee. The main issue in this case is whether the lessee's liability under the lease indemnification provision gave rise to a duty to defend and provide coverage under the lessee's insurance policy. We hold that the insurer had neither the duty to defend the lessee nor to provide coverage and reverse the final judgment.

### *The Underlying Lawsuit*

In April 2006, Robert Damiano sustained injuries while working on a construction project when a truss fell from a crane. The project's shell contractor, Cloutier Brothers, Inc., leased both the crane and its operator from appellee Royal Crane, LLC d/b/a Hunter Crane, a company that rented construction cranes and operators to perform hoisting services. Cloutier executed a rental agreement ("Rental Agreement") with Hunter Crane, which contained the following indemnity clause:

> RESPONSIBILITY FOR USE: Lessee [(Cloutier)] agrees to indemnify, defend and hold harmless Lessor [(Hunter Crane)], its employees, operators and agents from any and all claims for damage to property, damage to the work or bodily injury (including death) resulting from the use, operation, or possession of the crane and operator whether or not it be claimed or found that such damage or injury resulted in whole or in part from Lessor's negligence, from a defective condition of the crane or operator or from any act, omission or default of Lessor.

In June 2009, Damiano sued Hunter Crane and the crane operator asserting negligence, strict liability, and gross negligence. The complaint briefly mentioned Cloutier, stating that Cloutier retained Hunter Crane's services "as a vendor to provide a crane, as needed, for use by subcontractors working on construction of the residence." Relying upon the Rental Agreement's indemnity clause, Hunter Crane tendered its defense of the lawsuit to Cloutier. Cloutier declined the tender at the behest of its insurer—appellant Mid-Continent Casualty Company ("the Insurer").

As a result, Hunter Crane brought a third party action against Cloutier, seeking contractual indemnification and breach of the Rental Agreement. In its third party complaint, Hunter Crane alleged:

> 4. Defendant/Third Party Plaintiff, HUNTER, has been sued by Plaintiff, ROBERT DAMIANO, for damages arising from injuries [he] allegedly suffered while working at a residential construction site in Port St. Lucie, Florida. . . .

> 5. In the Underlying Lawsuit Plaintiff, ROBERT DAMIANO, alleges that HUNTER's employee negligently operated a crane at the residential construction site and allegedly injured [him.]

6. At the time of the accident, and all times material, HUNTER leased the crane and its operator to Third Party Defendant, CLOUTIER, pursuant to a written contract. . . .

7. Pursuant to the express terms of that contract, CLOUTIER agreed to indemnify and defend HUNTER from claims for damage or bodily injury resulting from the use of its crane....

. . .

9. Third Party Defendant breached its indemnity agreement by failing to provide HUNTER with an indemnity despite due demand therefore.

Facing significant exposure, Cloutier notified the Insurer of Hunter Crane's claims and requested that a defense be provided pursuant to its commercial general liability insurance policy ("the Policy"). The Policy defined the extent of Cloutier's coverage as follows:

We [(the Insurer)] will pay those sums that the insured [(Cloutier)] becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no[ ] duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which the insurance does not apply.

The Policy exempted from coverage "bodily injury" or "property damage" Cloutier was "obligated to pay . . . by reason of the assumption of liability in a contract or agreement." There were two exceptions to this "contractual" exemption from coverage: (1) where Cloutier would have been liable "in the absence of the contract or agreement" or (2) where Cloutier "[a]ssumed" the liability "in a contract or agreement that is an 'insured contract', provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement." Regarding the second exception, the Policy defined an "insured contract" as:

That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the *tort liability* of another party to pay for "bodily injury" or "property damage" to a third person or organization, *provided the "bodily injury" or "property damage"*

- 3 -

*is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.*

(Emphasis added).

In requesting a defense, Cloutier asserted the Rental Agreement was an "insured contract" falling under the exemption's second exception. The Insurer countered that it had no duty to defend or indemnify.

Left to its own devices, Cloutier proceeded with its defense. Ultimately, Hunter Crane settled with Damiano for $100,000 and moved for summary judgment against Cloutier based upon the Rental Agreement's indemnity clause. To protect its assets, Cloutier entered into a *Coblentz*[1] settlement agreement with Hunter Crane, wherein it stipulated to a $263,746.53 consent judgment—comprised of the $100,000 settlement with Damiano plus $163,746.53 for Hunter Crane's attorney's fees and costs—and assigned to Hunter Crane its claims against the Insurer. In exchange, Hunter Crane agreed not to execute the judgment against Cloutier's assets or its principals.

### Enforcement of the Coblentz Agreement

Hunter Crane, as Cloutier's assignee, instituted the instant action by filing a two-count complaint against the Insurer. The first count was for breach of contract predicated on the Insurer's wrongful failure to defend or indemnify Cloutier. The second count sought a declaratory judgment, which would establish, among other things, that the Insurer was required to defend and indemnify Cloutier as a result of the third party action.

#### Duty to Defend and to Indemnify

Following discovery, Hunter Crane moved for partial summary judgment on the issues of coverage and the Insurer's duty to defend, acknowledging that to "enforce" the *Coblentz* agreement it would need to prove "(1) coverage, (2) a wrongful refusal to defend, and (3) that [Hunter Crane's] settlement with Cloutier was reasonable and made in good faith."

Hunter Crane contended its third party complaint against Cloutier alleged sufficient facts to trigger the Insurer's duty to defend, in that it

---

[1]The term "*Coblentz* agreement" derives from the federal Fifth Circuit Court of Appeals decision in *Coblentz v. Am. Surety Co. of New York*, 416 F.2d 1059 (5th Cir. 1969) (applying Florida law).

established (1) that "Cloutier assumed Hunter Crane's liability for a bodily injury claim arising from Cloutier's use of Hunter Crane's crane and operator," and (2) that the Rental Agreement "was in effect at the time of Damiano's accident." Since an insurer's duty to defend arises solely from the allegations of the complaint, Hunter Crane asserted the Insurer breached its contractual duty.

The Insurer responded with a cross-motion for summary judgment. It argued, among other things, that Hunter Crane's claims were barred by the Policy's contractual liability exclusion, since (1) Cloutier "would have no liability in the absence of the" Rental Agreement and (2) the Rental Agreement was not an "insured contract," because it assumed tort liability that would not have been "imposed by law in the absence of any contract or agreement."

The trial court granted Hunter Crane's motion for partial summary judgment, and denied that of the Insurer. The court ruled that the Insurer "had a duty to defend and [wa]s now precluded from arguing coverage issues other than as it may affect the reasonableness of the settlement of Hunter Crane's third party against Cloutier."

Based on a ruling on a motion in limine, the trial court ordered the parties to "prepare a Verdict Form allowing the jury to quantify a reasonable settlement amount if it deems the amount of the underlying consent judgment to be unreasonable." At a subsequent pre-trial hearing, the parties informed the trial court they had reached a stipulation "that a reasonable amount of the judgment would have been $230,000," so no issues were left for a jury. Pursuant to the stipulation, the trial court entered judgment for $230,000.[2]

### The Coblentz Agreement

---

[2]Because we hold that the Insurer had no duty to defend or indemnify, we do not address the issue of whether, in a *Coblentz* trial, the jury determines a reasonable settlement amount if it finds that the underlying settlement amount was unreasonable. *Compare Shook v. Allstate Ins. Co.*, 498 So. 2d 498, 500 (Fla. 4th DCA 1986); *Steil v. Fla. Physicians' Ins. Reciprocal*, 448 So. 2d 589, 592 (Fla. 2d DCA 1984); *Griggs v. Bertram*, 443 A.2d 163, 174 (N.J. 1982); *Burlington Ins. Co. v. Northland Ins. Co.*, 766 F. Supp. 2d 515, 528-30 (D.N J. 2011), with *Parking Concepts, Inc. v. Tenney*, 83 P.3d 19, 26 (Ariz. 2004); *Patrons Oxford Ins. Co. v. Harris*, 905 A.2d 819, 829 (Me. 2006); *U.S. Auto. Ass'n. v. Hartford Ins. Co.,* 468 So. 2d 545 (Fla. 5th DCA 1985) (involving excess insurer that settled claims against its insured after primary insurer failed to defend or indemnify).

A "*Coblentz* agreement" refers to a negotiated consent judgment "entered into between an insured and a claimant in order to resolve a lawsuit in which the insurer has denied coverage and declined to defend." *Bradfield v. Mid-Continent Cas. Co.*, 15 F. Supp. 3d 1253, 1257 n.6 (M.D. Fla. 2014) (citation omitted); *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC*, 601 F.3d 1143, 1147 n.2 (11th Cir. 2010). Along with establishing liability and fixing damages, the consent judgment allows the insured to "assign[], to the injured party, any cause of action [it] had against the [its] insurer" in exchange for a release from personal liability. *Rodriguez v. Sec. Nat'l Ins. Co.*, 138 So. 3d 520, 521 n.3 (Fla. 3d DCA 2014); *Perera v. U.S. Fid. & Guar. Co.*, 35 So. 3d 893, 903 (Fla. 2010). To thereafter enforce the agreement, the assignee must bring an action against the insurer and prove "(1) the damages are covered by the policy; (2) the insurer wrongfully refuse[d] to defend; and (3) the settlement is reasonable and made in good faith." *U.S. Fire Ins. Co. v. Hayden Bonded Storage Co.*, 930 So. 2d 686, 690-91 (Fla. 4th DCA 2006).

*Duty to Defend and Coverage*

While similar, the first two required showings—the existence of coverage under the policy and the insurer's duty to defend—are distinct in that the duty to defend is broader than the issue of coverage. *See Farrer v. U.S. Fid. & Guar. Co.*, 809 So. 2d 85, 88 (Fla. 4th DCA 2002). The insurer's duty to defend arises solely from "'the facts and legal theories alleged in the pleadings and claims against the insured.'" *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1323 (11th Cir. 2014) (quoting *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1275 (11th Cir. 2008)). The merits of the underlying suit are irrelevant. *See Trailer Bridge, Inc. v. Ill. Nat'l Ins. Co.*, 657 F.3d 1135, 1142 (11th Cir. 2011). "If the allegations of the complaint leave any doubt as to the duty to defend, the question must be resolved in favor of the insured." *Lime Tree Vill. Cmty. Club Ass'n v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993) (citations omitted).

Consequently, "an insurer is obligated to defend a claim even if it is uncertain whether coverage exists under the policy." *Am. Pride Bldg. Co., LLC*, 601 F.3d at 1149 (quoting *First Am. Title Ins. Co. v. Nat'l Union Fire Ins. Co.*, 695 So. 2d 475, 476 (Fla. 3d DCA 1997)). "Furthermore, once a court finds that there is a duty to defend, the duty will continue 'even though it is ultimately determined that the alleged cause of action is groundless and no liability is found within the policy provisions defining coverage.'" *Sinni v. Scottsdale Ins. Co.*, 676 F. Supp. 2d 1319, 1323 (M.D. Fla. 2009) (quoting *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 814 (Fla. 1st DCA 1985)).

By contrast, coverage—and the accompanying duty to indemnify—"is not determined by reference to the claimant's complaint, but rather by reference to the actual facts and circumstances of the injury." *Nat'l Trust Ins. Co. v. Graham Bros. Constr. Co.*, 916 F. Supp. 2d 1244, 1253 (M.D. Fla. 2013) (citing *Underwriters at Lloyds London v. STD Enters.*, 395 F. Supp. 2d 1142, 1147 (M.D. Fla. 2005)); *see also State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1077 n.3 (Fla. 1998). "Therefore, notwithstanding the allegations against the insured, if the facts show that the insured's liability stems from a claim for which no coverage is provided under the policy, the insurer owes no duty of indemnification." *Travelers Indem. Co. of Ill. v. Royal Oak Enters., Inc.*, 344 F. Supp. 2d 1358, 1366 (M.D. Fla. 2004). This premise

> holds true even where . . . the insured's liability was arrived at through a settlement of the action against the insured, because a settlement does not, by itself, obligate the insurer to pay for a non-covered claim. Instead, the insurer's duty to indemnify a settlement obligation must be measured by the facts "inherent in the settlement" or, in other words, the facts extant at the time the settlement was reached.

*Id.* (footnote omitted); *see also Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001).

"Indeed, the mere entry of a consent judgment does not establish coverage and an insurer's unjustifiable failure to defend the underlying action does not estop the insurer from raising coverage issues in a subsequent suit to satisfy a consent judgment entered pursuant to a *Coblentz* agreement." *Sinni*, 676 F. Supp. 2d at 1324 (citation omitted). What the consent judgment does do, however, is bar the insurer from "rais[ing] any defense to the plaintiff's claim . . . that should have been raised in the underlying action." *Wrangen v. Pa. Lumbermans Mut. Ins. Co.*, 593 F. Supp. 2d 1273, 1278 (S.D. Fla. 2008) (citing *Gallagher v. Dupont*, 918 So. 2d 342, 347 (Fla. 5th DCA 2005); *Independent Fire Ins. Co. v. Paulekas*, 633 So. 2d 1111, 1114 (Fla. 3d DCA 1994)). The notion is that the settlement establishes the *insured*'s liability, but not the insurer's obligation of coverage. *See Ahern v. Odyssey Re (London) Ltd.*, 788 So. 2d 469, 472 (Fla. 4th DCA 2001); *see also Columbia Cas. Co. v. Hare*, 156 So. 370, 374 (Fla. 1934).

### There was no duty to defend because the Rental Agreement was not an "insured contract" within the meaning of the Policy

Because an insurance policy is treated like any other contract, ordinary contract principles govern its interpretation and construction. *See Fabricant v. Kemper Independence Ins. Co.*, 474 F. Supp. 2d 1328, 1330 (S.D. Fla. 2007). "Terms used in a policy should be read in light of the skill and experience of ordinary people." *Gen. Star Indem. Co. v. W. Fla. Vill. Inn, Inc.*, 874 So. 2d 26, 29 (Fla. 2d DCA 2004) (citation omitted). "Where the policy language is plain and unambiguous, no special rule of construction or interpretation applies, and the court should give the plain language in the contract the meaning it clearly expresses." *N. Pointe Cas. Ins. Co. v. M & S Tractor Servs., Inc.*, 62 So. 3d 1281, 1282 (Fla. 2d DCA 2011) (citation omitted). However, "exclusionary provisions which are ambiguous or otherwise susceptible to more than one meaning must be construed in favor of the insured, since it is the insurer who usually drafts the policy." *State Farm Mut. Auto. Ins. Co. v. Pridgen*, 498 So. 2d 1245, 1248 (Fla. 1986).

An insurer's duty to defend arises from the "eight corners" of the complaint and the policy. *See Acosta, Inc. v. Nat'l Union Fire Ins. Co.*, 39 So. 3d 565, 575 (Fla. 1st DCA 2010). The parties agree that the Rental Agreement provided for Cloutier's indemnification of Hunter Crane. Hunter Crane argues—and the trial court agreed—that the Rental Agreement's indemnification clause constituted an "insured contract," thrusting it outside the policy's contractual obligation exclusion. As indicated above, the Policy's definition of an "insured contract" is:

> That part of any contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

There has been debate regarding this provision's reach. Three Florida federal district courts have considered this identical provision, and each has taken the narrow view that the policy extends coverage "by an 'insured contract' or written agreement only for vicarious liability on behalf of" the insured. *United Rentals, Inc. v. Mid-Continent Cas. Co.*, 843 F. Supp. 2d 1309, 1314 (S.D. Fla. 2012); *see also King Cole Condo. Ass'n v. Mid-Continent Cas. Co.*, 21 F. Supp. 3d 1296, 1299 (S.D. Fla. 2014); *Mid-*

*Continent Cas. Co. v. Constr. Servs. & Consultants, Inc.*, No. 06-CV-80922, 2008 WL 896221, at *3 (S.D. Fla. Mar. 31, 2008).

For example, in *United Rentals,* a construction worker sustained fatal injuries while operating a scissor lift at a construction site. 843 F.Supp.2d at 1311. The scissor lift was leased by the work site contractor, General Southern, from United Rentals through a rental agreement providing that General Southern would indemnify United Rentals for any claims related to the operation of the scissor lift. *Id.* Eventually, the deceased's estate filed suit against both United Rentals and General Southern, asserting that each was liable for strict liability and negligence. *Id.* The complaint did not attempt to hold United Rentals liable for General Southern's acts or omissions. *Id.*

In response to the action, United Rentals filed a cross-claim against General Southern to collect under the indemnification provision. *Id.* at 1312. United Rentals also instituted a declaratory relief action seeking coverage under General Southern's primary and excess policies with Mid-Continent Casualty Co. *Id.* Specifically, United Rentals alleged it was entitled to coverage under the policy as an "additional insured" because the Policy "extend[ed] coverage to a party to an 'insured contract' with General Southern," and the scissor lift rental agreement was such a contract. *Id.*

The district court reasoned that for United Rentals to be covered under the primary policy as an additional insured, the rental agreement between United Rentals and General Southern needed to be an "insured contract" as contemplated by the policy. *Id.* at 1313-14. Confronting the same policy provision at issue in this case, the district court concluded that under the "plain language" of the policy, "coverage is extended by an 'insured contract' or written agreement only for vicarious liability on behalf of General Southern." *Id.* at 1314. The court concluded that

> the Estate's State Court Complaint alleges claims against United Rentals premised solely on theories of strict liability and negligence arising from United Rental's own acts or omissions. Thus, even if the Rental Agreement were a valid contract or agreement, the coverage sought by United Rentals is not contemplated by the plain terms of the insurance policies, which limit an "insured contract" or written agreement—by which Mid–Continent would extend coverage of the insurance policies—to agreements concerning vicarious liability.

*Id.* (internal citations omitted).

We do not believe the Policy definition of an "insured contract" should be construed so narrowly. That provision limits the Insurer's coverage to situations involving "'bodily injury . . . *caused, in whole or in part,* by [Cloutier] or by *those acting on [Cloutier's] behalf.*" (Emphasis added). By not using the term "vicarious liability" and, instead, focusing on whether the insured (Cloutier), or those working on its behalf, "caused" the injury, the "language indicates that policy coverage is not limited solely to vicarious liability, but that coverage extends to situations in which liability is shared" by the insured/indemnitor and its indemnitee. *Nor-Son, Inc. v. W. Nat'l Mut. Ins. Co.,* No. A11-2016, 2012 WL 1658938, at *3 (Minn. Ct. App. May 14, 2012); *see also* Steven G.M. Stein & Jean Gallo Wine, *The Illusions of Additional Insured Coverage,* 34-Spring Constr. Law. 14, 23 (Spring 2014) ("The newer language clearly covers a broader range of liability than that which is solely vicarious in nature.").

Therefore, an indemnity agreement can be an "insured contract" under the policy where the injury is caused by the indemnitee's negligence, so long as the named insured "caused" some part of the injuries or damages or is otherwise vicariously liable. *See generally Harleysville Ins. Co. v. Physical Distribution Servs., Inc.,* 716 F.3d 451, 459-62 (8th Cir. 2013).

Even under this relaxed standard, the allegations in Hunter Crane's third party complaint failed to trigger the Insurer's duty to defend Cloutier. In arguing to the contrary, Hunter Crane places great emphasis on the fact that the company and its crane operater worked on Cloutier's "behalf." *See, e.g., Webster's Third New International Dictionary* 198 (1993) (defining "on behalf of" as "in the interest of," "as the representative of," and "for the benefit of"). The problem with this view is that this loose characterization of the Cloutier/Hunter Crane relationship does not implicate a legal theory that Cloutier caused some part of the injury or damage.

Hunter Crane's third party complaint did not assert a legal theory under which Cloutier can be said to have "caused" the injury in whole or in part. No allegation described how Cloutier contributed to causing the accident. No allegation attempted to invoke the borrowed servant doctrine, which dictates that "one who borrows and *exercises control* over the servant or worker of another in effect assumes all liability for the activities of the borrowed servant or worker." *Halifax Paving, Inc. v. Scott & Jobalia Constr. Co.,* 565 So. 2d 1346, 1347 (Fla. 1990) (citation omitted and emphasis added). "Under this common law doctrine, one employer can 'lend' its employee to another 'special employer.'" *Fossett v. Se. Toyota*

*Distribs., LLC*, 60 So. 3d 1155, 1157-58 (Fla. 1st DCA 2011).[3]  Nor did the third party complaint cast Cloutier as the employer of an independent contractor who actively participated in or interfered with the job to the extent that it directly influenced the manner in which the work was performed.  *See Sterling Fin. & Mgmt., Inc. v. Gitenis*, 117 So. 3d 790, 794-95 (Fla. 4th DCA 2013).

Hunter Crane's third party complaint contained no allegation regarding Cloutier's power to "control" the crane operator's actions.  The pleading identified no Cloutier employee who contributed to the accident.  Rather, the third party complaint stated merely that Cloutier had contracted with Hunter Crane to lease the crane and its operator, that Hunter Crane negligently injured Damiano and was sued as a result, and that Cloutier did not honor the indemnity agreement.  As a result, the allegations of Hunter Crane's third party complaint did not demonstrate that Damiano's injury was caused by either Cloutier or those working on Cloutier's "behalf," so as to bring the Rental Agreement within the definition of an "insured contract," an exception to the exclusion from coverage.  The eight corners of the complaint and the policy do not provide a basis for the Insurer's duty to defend.  Because the accident arose from a claim excluded from coverage under the policy, the Insurer has no duty of indemnification.

We therefore reverse and remand to the circuit court for the entry of a final judgment in favor of the appellant.

WARNER and CONNER, JJ., concur.

*       *       *

### *Not final until disposition of timely filed motion for rehearing.*

[3]"A special employer qualifies as such where '(1) there was a contract for hire, either express or implied, between the special employer and the employee; (2) the work being done at the time of the injury was essentially that of the special employer; and (3) the power to control the details of the work resided with the special employer.'"  *Fossett*, 60 So. 3d at 1158 (quoting *St. Lucie Falls Prop. Owners Ass'n v. Morelli*, 956 So. 2d 1283, 1285 (Fla. 4th DCA 2007)).

Without meeting these prerequisites—and, in particular, showing the special employer's "control" over the leased employee—the doctrine creates a presumption in favor of the continuance of the general employment.  *See Shelby Mut. Ins. Co. v. Aetna Ins. Co.,* 246 So. 2d 98 (Fla. 1971); *Gen. Crane, Inc. v. McNeal*, 744 So. 2d 1062, 1065 (Fla. 4th DCA 1999).